## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| ALBERT FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-11457-JLT |
| | ) | |
| MASSACHUSETTS DEPARTMENT OF | ) | |
| CORRECTION; HAROLD CLARKE, | ) | |
| COMMISSIONER OF CORRECTION; | ) | |
| JAMES BENDER, DEPUTY COMMISSIONER | ) | |
| OF CORRECTION; PETER ST. AMAND, | ) | |
| SUPERINTENDENT OF MCI-CEDAR | ) | |
| JUNCTION; KENNETH NELSON, ASSISTANT | ) | |
| DEPUTY COMMISSIONER OF | ) | |
| CORRECTION; MICHAEL BELLOTTI, | ) | |
| NORFOLK COUNTY SHERIFF | ) | |
| | ) | |
| Defendants. | ) | |

_____)

### AMENDED COMPLAINT

Plaintiff Albert Ford for his complaint against Defendants Massachusetts Department of

Correction, Harold Clarke, James Bender, Peter St. Amand, Kenneth Nelson (collectively, the

"DOC Defendants"), and Michael Bellotti states as follows:

### PARTIES

1.      Plaintiff Albert Ford is an individual who has been and continues to be in the

custody of the Massachusetts Department of Correction and confined to the Departmental

Disciplinary Unit ("DDU") in the Massachusetts Correction Institution at Cedar Junction ("MCI-

Cedar Junction") in Walpole, Massachusetts.

2.      Defendant Massachusetts Department of Correction ("DOC") is a department of

the Commonwealth of Massachusetts.

3.     Defendant Harold Clarke is the Commissioner of Correction for the DOC and, upon information and belief, assumed this position on or about November 26, 2007.  Under Mass. Gen. Laws ch. 124, § 1, Defendant Clarke is responsible for the administration of all state correctional facilities.  He is sued in his official and individual capacities.

4.     Defendant James Bender is the Deputy Commissioner of the Prison Division of the DOC.  Upon information and belief, Defendant Bender is responsible for overseeing the daily operations of the DOC.  Upon information and belief, Defendant Bender also served as the Acting Commissioner of Correction prior to Defendant Clarke's appointment as Commissioner of Correction.  He is sued in his official and individual capacities.

5.     Defendant Peter St. Amand is the Superintendent of MCI-Cedar Junction. According to DOC regulation 103 DOC 101.01, a Superintendent of a prison is "ultimately responsible for the overall functioning of the institution," including supervision of inmates. Defendant St. Amand is sued in his official and individual capacities.

6.     Defendant Kenneth Nelson is Assistant Deputy Commissioner, Southern Division of the DOC.  According to DOC regulation 103 DOC 102.1(1), an Assistant Deputy Commissioner is responsible for policy compliance and operations at DOC facilities under his or her supervision.  Upon information and belief, MCI-Cedar Junction is one of the DOC facilities for which Defendant Nelson has responsibility.  Defendant Nelson is sued in his official and individual capacities.

7.     Defendant Michael Bellotti is the Norfolk County Sheriff.  Under Mass. Gen. Laws ch. 126, §§ 4, 16, a county sheriff controls the county jail in which pretrial detainees are to be held.  He is sued in his official capacity.

US1DOCS 6730708v7

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

9.      Plaintiff is entitled to declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as Mass. Gen. Laws ch. 231A under the Court's supplemental jurisdiction.

10.      Venue is proper in this district under 28 U.S.C. § 1391(b).

**STATEMENT OF FACTS**

**Mr. Ford's First Period of Unlawful Pretrial Confinement**

11.      In 1992, Mr. Ford was convicted and sentenced in Middlesex Superior Court to a term of incarceration of 15 to 25 years.  Following his conviction and sentencing, Mr. Ford was assigned inmate identification number W-53215 and incarcerated at MCI-Cedar Junction.

12.      In or about January 2003, while serving his sentence Mr. Ford was given a sanction of ten years confinement to the DDU, as a result of DOC disciplinary proceedings.

13.      In 2002, Mr. Ford was indicted in Norfolk County for the incident for which he received the ten-year DDU sanction.  Although he was still serving his sentence from his 1992 conviction, his bail was set at $50,000.

14.      On or about January 2, 2007, five days before Mr. Ford was to complete serving his 1992 sentence, Defendant Bellotti's office requested that the Norfolk County District Attorney's Office approve the continued confinement of Mr. Ford in the custody of the DOC pending his trial in Norfolk Superior Court, pursuant to Mass. Gen. Laws ch. 276, § 52A.

15.      On or about January 2, 2007, the Office of the District Attorney for Norfolk County granted Defendant Bellotti's request.

16.     On or about January 7, 2007, Mr. Ford finished serving his sentence from his 1992 conviction.

17.     Even though Mr. Ford had completed his sentence, the DOC continued to hold Mr. Ford, a pretrial detainee, in the DDU at MCI-Cedar Junction.  Mr. Ford was advised by the DDU director that he must complete serving his DDU sanction, notwithstanding his status as a pretrial detainee.

### Mr. Ford's Second Period of Unlawful Pretrial Confinement

18.     In or about March 2007, Mr. Ford's family posted the bail set in connection with his indictment in Norfolk County and Mr. Ford was released from DOC custody.

19.     Mr. Ford's bail was revoked on or about June 26, 2007.

20.     On or about June 26, 2007, Defendant Bellotti's office again wrote to the Norfolk County District Attorney's Office, pursuant to Mass. Gen. Laws ch. 276, § 52A, seeking approval for Mr. Ford to be held by the DOC rather than by Defendant Bellotti.

21.     On or about June 26, 2007, the Office of the District Attorney for Norfolk County granted Defendant Bellotti's request.

22.     When Mr. Ford was taken back into custody on or about June 26, 2007, he was transported directly to MCI-Cedar Junction and immediately placed in the DDU.

23.     Upon being incarcerated at MCI-Cedar Junction, Mr. Ford was assigned a new inmate identification number, A102065.  Upon information and belief, the "A" designated Mr. Ford's status as a pretrial detainee.

- 4 -

24.     Mr. Ford remained confined in the DDU at MCI-Cedar Junction after his bail was revoked.  As a consequence, Mr. Ford spent almost an entire year confined to the DDU at MCI-Cedar Junction even though he was a pretrial detainee.

25.     Upon information and belief, at no time before or during Mr. Ford's confinement in the DDU as a pretrial detainee did the DOC Defendants evaluate the reasonableness of this confinement or the availability of less punitive alternatives; instead, they required Mr. Ford to continue to serve the punitive, ten-year DDU sanction imposed in 2002 when he was serving a previous sentence.

26.     Upon information and belief, both times that Mr. Ford was placed in the custody of the DOC from the Norfolk County Sheriff's office, none of the DOC Defendants "determine[d] at the time of commitment, and from time to time thereafter, the custody requirements" of Mr. Ford, as required under Mass. Gen. Laws ch. 124, § 1(g).  Nor, upon information and belief, did the DOC Defendants comply with standard DOC policies, regulations, or practices for the classification of prisoners entering DOC custody.

27.     Upon information and belief, both times that Mr. Ford was placed in the custody of the DOC from the Norfolk County Sheriff's Office as a pretrial detainee, no "proceedings" were conducted as required by Mass. Gen. Laws ch. 256, § 52A.

28.     On or about May 5, 2008, Mr. Ford pled guilty to the charges pending against him in Norfolk County Superior Court and was sentenced to four to five years incarceration.  Mr. Ford was then returned directly to the DDU at MCI-Cedar Junction and assigned a new inmate identification number, W92070.

29.     At no time before beginning his new sentence in 2008 was Mr. Ford "delivered by the sheriff or other officer authorized to execute sentence to [a reception] center for the purpose of proper classification of the prisoner" as required by Mass. Gen. Laws ch. 127, § 20 as well as 103 CMR 420.08.  In addition, Mr. Ford did not have an Initial Classification Board Hearing as required by 103 CMR 420.08(5).  Rather, upon information and belief, the DOC Defendants simply confined Mr. Ford to MCI-Cedar Junction and resumed the DDU sanction from his prior criminal sentence without regard for applicable DOC regulations, policies, or practices regarding the intake and classification of inmates.

30.     At no time since completing his prior sentence in January 2007, has Mr. Ford received a DDU "sanction recommended by a Hearing Officer" under 103 CMR 430.22.

31.     Upon information and belief, the DOC Defendants disregarded their regular policies, practices, or procedures for classification or segregation of pretrial detainees or inmates when confining Mr. Ford to the DDU

## Mr. Ford's Challenges to His Unlawful Confinement

32.     Mr. Ford repeatedly objected to being held in MCI-Cedar Junction and, more particularly, in the DDU.

33.     In or about February 2007, Mr. Ford objected to his continued detention in the DDU.  In response, the DDU director informed Mr. Ford that he would continue serving his ten-year DDU sanction at MCI-Cedar Junction unless he made bail and left the custody of the DOC.

34.     On or about January 8, 2007, Mr. Ford challenged his first period of pretrial detainment by filing a grievance.  Mr. Ford contended that he should not be held in the DDU as a

pretrial detainee and requested that he be transferred to the county jail to be held pending trial on his indictment.

35.     Mr. Ford's grievance was denied and he appealed the denial on or about January 13, 2007.  On or about February 6, 2007, the acting superintendent denied Mr. Ford's appeal, contending that Mr. Ford was properly housed in the DDU and that his status as a pretrial detainee was irrelevant.

36.     On or about July 2, 2007, Mr. Ford filed a second grievance protesting his confinement in the DDU at MCI-Cedar Junction as a pretrial detainee.  This grievance was denied on or about July 13, 2007 and Mr. Ford appealed on or about July 14, 2007.

37.     On or about August 27, 2007, Defendant St. Amand affirmed the denial of Mr. Ford's appeal of his July 2 grievance, stating that even as a pretrial detainee, Mr. Ford could be subjected to confinement in the DDU to serve the remainder of his ten-year DDU sanction.

38.     In addition, on or about July 18, 2007, Mr. Ford wrote former Commissioner of Correction Kathleen Dennehy to protest the conditions of his pretrial confinement.  On or about August 23, 2007, Defendant Nelson, at the request of Defendant Bender, responded to Mr. Ford's letter and stated that he was "properly housed in the DDU serving the remainder of a ten (10) year DDU sentence" and that the "fact that you are awaiting trial pursuant to M.G.L. 276, § 52A does not prohibit the Department from requiring that you complete your DDU sentence." Defendants Bender and St. Amand were copied on Defendant Nelson's letter.

## Conditions in the DDU

39.     The DDU is designed, intended, and used to punish prisoners who have committed a serious infraction of the DOC disciplinary rules.

US1DOCS 6730708v7

40.     As reported in *Commonwealth v. Forte*, No. 97548, 1995 WL 809491, at *1 (Mass. Super. March 8, 1995), Larry DuBois, who was the Commissioner of Correction at the time the DDU opened in 1992, explained that the DDU was "designed for punitive segregation" and that "[a] sentence to the DDU is designed to punish and thereby deter serious misbehavior by inmates in the Department's general population."

41.     In the DDU, Mr. Ford is confined for approximately twenty-three hours each day to a small cell measuring seven feet by twelve feet with only a small window in his door and a small window to the outside that lets in minimal light.

42.     Mr. Ford is allowed only one hour of solitary exercise each weekday in a small outdoor cage so long as the weather permits.

43.     Every time that Mr. Ford leaves his cell, he is subjected to a strip search and placed in full restraints.

44.     Mr. Ford is virtually cut off from human contact through his confinement in the DDU:

  a.     Mr. Ford cannot see other prisoners from his cell.

  b.     Mr. Ford must eat each meal alone in his cell.

  c.     In order to communicate with other prisoners in the DDU, Mr. Ford must yell through air vents or the food slot in his cell door.

  d.     Mr. Ford is only allowed non-contact visits from individuals other than his attorneys, *i.e.*, he is separated from his visitor by a plexiglass window and must speak through a telephone. Mr. Ford is allowed no more than four visits a month, apart from attorney visits, which may be reduced depending on his behavior.

  e.     Mr. Ford is allowed only a maximum of four telephone calls per month. As with visits, Mr. Ford can be denied the opportunity to make phone calls depending on his behavior.

  f.     Mr. Ford's access to reading material, radio and the television is highly restricted and dependent on Mr. Ford's behavior.

- 8 -

45.     The social isolation and sensory deprivation associated with segregation in the DDU can create symptoms of mental illness even in psychologically healthy individuals.  These symptoms include psychological pain, massive anxiety and panic attacks, hypersensitivity, difficulty with concentration and memory, compulsiveness, uncontrollable rage, acute confusional states, social withdrawal, hopelessness, hallucinations, and paranoia.

46.     Mr. Ford is prohibited from visiting MCI-Cedar Junction's main law library.  In order to access materials from the main law library, he must submit a request for the materials and then wait to receive copies or access to the materials in the DDU law library.  The administrative steps involved in this process means that it takes Mr. Ford about ten days to receive material that he requests from the main law library.  Not only does this process slow Mr. Ford's access to legal materials, it also prevents him from browsing the greater resources available at the main law library.  In addition, Mr. Ford is limited to having in his possession a maximum of eight cases from the main law library at one time and is only allowed to retain them for fourteen days.

47.     The drastic restrictions imposed on Mr. Ford in the DDU made more difficult his ability to work and communicate with his counsel to prepare his defense of the indictment in Norfolk County.  For example, even when Mr. Ford was able to meet with his counsel, he had to do so in shackles and with a corrections officer standing guard outside the meeting room, both of which restrictions impaired Mr. Ford's ability to openly and freely communicate with counsel.

48.     The limitation on the number of telephone calls and visitors allowed Mr. Ford hindered his ability to gather information for use in his criminal proceedings in Norfolk County.

49.     Mr. Ford's confinement in MCI-Cedar Junction also interfered with his transportation to court proceedings in Norfolk County Superior Court.

US1DOCS 6730708v7

50.     Mr. Ford's placement in the DDU has negatively affected his health.  Mr. Ford is a diabetic, and rather than the three daily tests of his blood sugar that he requires along with any necessary insulin shorts, Mr. Ford is limited to only two tests and shots a day because of the restrictions imposed on his movement and his access to health facilities in the DDU.

51.     During his confinement in the DDU as a pretrial detainee, Mr. Ford has been subjected to onerous and punitive conditions of confinement that are not imposed upon convicted inmates in the general population at MCI-Cedar Junction.

52.     During his his confinement in MCI-Cedar Junction, Mr. Ford has been subjected to onerous and punitive conditions of confinement that are not imposed upon Norfolk County pretrial detainees held in the Norfolk County Correctional Center.

53.     Mr. Ford's confinement to the DDU as a pretrial detainee has caused him emotional stress, anxiety, and anguish.

**Deliberate Indifference**

54.     Upon information and belief, the DOC Defendants are aware that the harsh conditions of confinement through segregation in the DDU standing on their own amount to punishment.

55.     Upon information and belief, each of the DOC Defendants had direct knowledge that Mr. Ford was a pretrial detainee and that he was nonetheless being improperly subjected to punitive conditions in MCI-Cedar Junction and in the DDU under a DDU sanction from a previous criminal sentence, and/or as a supervisor within the DOC, encouraged, condoned, acquiesced, or was deliberately indifferent to Mr. Ford's detention in MCI-Cedar Junction and confinement in the DDU.

US1DOCS 6730708v7

56.     In 1997, an independent panel investigating the death of John Salvi, a prisoner

who committed suicide while in "lockdown" at MCI-Cedar Junction, recognized the deleterious

effects of segregation on inmates, whether or not they were currently identified as "open mental

health cases."  REPORT ON THE PSYCHIATRIC MANAGEMENT OF JOHN SALVI IN MASSACHUSETTS

DEPARTMENT OF CORRECTION FACILITIES 1995-1996 (submitted to the Massachusetts

Department of Correction by the University of Massachusetts Medical Center Department of

Psychiatry on January 31, 1997), at 38.  The panel recommended daily mental health visits to all

inmates who were locked in their cells 23 hours a day "to provide monitoring of their mental

condition and an opportunity for meaningful social contact and mental health counseling."  *Id.*

The purpose of the visits to these inmates who were not "open mental health cases" would be to

"help to identify and protect inmates who are becoming quietly despondent and suicidal in such

conditions." *Id.*

57.     The punitive conditions of confinement in the DDU, including the effects of

isolation and abuse of inmates by guards, have also received widespread media coverage.  *See,

e.g.*, Jonathan Saltzman, et al., *Guards, inmates a volatile dynamic*, Boston Globe, Dec. 11,

2007, at 1A; Robert Preer, *The Solitary Men*, Boston Globe, April 4, 2004, at 1A; Bruce Porter,

*Is Solitary Confinement Driving Charlie Chase Crazy?*, N.Y. Times, Nov. 8, 1998, sec. 6.

58.     In *Brown v. Commissioner of Correction*, 394 Mass. 89 (Mass. 1985), the

Supreme Judicial Court held that confinement at the state prison at Walpole (what is now MCI-

Cedar Junction) constitutes "infamous punishment" under Massachusetts law.

59.     Upon information and belief, the DOC Defendants are aware of the report, case,

and media coverage described above.

60.     An actual case or controversy exists between Mr. Ford and Defendants with regard to his confinement in MCI-Cedar Junction and in the DDU.

## COUNT ONE

**Substantive Due Process Under the Fourteenth Amendment of the United States Constitution**
(42 U.S.C. § 1983)

61.     Mr. Ford restates and realleges paragraphs 1-60 as if fully stated herein.

62.     By their policies, practices, acts, or omissions, the DOC Defendants, acting under color of state law, violated the right of Mr. Ford to be free from improper punishment as guaranteed by the due process clause of the Fourteenth Amendment of the United States Constitution, as enforceable through 42 U.S.C. § 1983.

63.     By confining Mr. Ford to the DDU, which serves to punish prisoners, the DOC Defendants intended to punish Mr. Ford in violation of his Fourteenth Amendment right to be free from punishment as a pretrial detainee.

64.     By confining Mr. Ford to the DDU under punishing conditions of segregation and isolation that exceed any legitimate purpose in maintaining order in the facility, the DOC Defendants have punished Mr. Ford in violation of his Fourteenth Amendment right to be free from punishment as a pretrial detainee

65.     By confining Mr. Ford to the DDU while aware of the punitive conditions there, the DOC Defendants acted with deliberate indifference to Mr. Ford's Fourteenth Amendment right to be free from punishment as a pretrial detainee.

66.     As applied to Mr. Ford by the DOC Defendants and Defendant Bellotti, Mass. Gen. Laws ch. 276, § 52A violates the Fourteenth Amendment of the United States Constitution

US1DOCS 6730708v7

because by allowing Mr. Ford to be confined to the state prison, it has subjected Mr. Ford to punishment as a pretrial detainee without due process of law.

67.     By confining Mr. Ford in the DDU based on a DDU sanction imposed during Mr. Ford's prior criminal sentence, the DOC Defendants have violated Mr. Ford's Fourteenth Amendment right to due process.

## <u>COUNT TWO</u>

### Substantive Due Process Under Articles 1, 10, and 12 of the Massachusetts Declaration of Rights

(Mass. Gen. Laws ch. 231A)

68.     Mr. Ford restates and realleges paragraphs 1-67 as if fully stated herein.

69.     By their policies, practices, acts, or omissions, the DOC Defendants violated Mr. Ford's right to be free from improper punishment as guaranteed by the due process protections of Articles 1, 10, and 12 of the Massachusetts Declaration of Rights.

70.     By imposing on Mr. Ford the punishment of his ten-year DDU sanction and by confining Mr. Ford to the DDU, which serves to punish prisoners, the DOC Defendants intended to punish Mr. Ford in violation of his due process rights under Articles 1, 10, and 12 of the Massachusetts Declaration of Rights to be free from punishment as a pretrial detainee.

71.     By confining Mr. Ford to the DDU under punishing conditions of segregation and isolation that exceed any legitimate purpose in maintaining order in the facility, the DOC Defendants have punished Mr. Ford in violation of his due process rights under Articles 1, 10, and 12 of the Massachusetts Declaration of Rights to be free from punishment as a pretrial detainee.

US1DOCS 6730708v7

72.     By confining Mr. Ford to the DDU while aware of the punitive conditions there, the DOC Defendants acted with deliberate indifference to Mr. Ford's due process rights under Articles 1, 10, and 12 of the Massachusetts Declaration of Rights to be free from punishment as a pretrial detainee.

73.     As applied to Mr. Ford by the DOC Defendants and Defendant Bellotti, Mass. Gen. Laws ch. 276, § 52A violates Mr. Ford's rights under Articles 1, 10, and 12 of the Massachusetts Declaration of Rights because by allowing him to be confined to the state prison, it has subjected Mr. Ford to punishment as a pretrial detainee without due process of law.

74.     By confining Mr. Ford in the DDU based on a DDU sanction imposed during Mr. Ford's prior criminal sentence, the DOC Defendants have violated Mr. Ford's right to due process under Articles 1, 10, and 12 of the Massachusetts Declaration of Rights.

## <u>COUNT THREE</u>

**Procedural Due Process Under the Fourteenth Amendment of the United States Constitution**

(42 U.S.C. § 1983)

75.     Mr. Ford restates and realleges paragraphs 1-74 as if fully stated herein.

76.     By their policies, practices, acts, or omissions, the DOC Defendants, acting under color of state law, violated Mr. Ford's right to procedural due process as guaranteed by the Fourteenth Amendment of the United States Constitution, as enforceable through 42 U.S.C. § 1983.

77.     Under Mass. Gen. Laws ch. 276, § 52A, the removal of a pretrial detainee to a state correctional institutional must be preceded by "proceedings."  Given the important constitutional issues at stake in such a determination, at a minimum, these proceedings must

- 14 -

include an evidentiary hearing and findings of fact made by a justice of the Massachusetts Superior Court.

78.     The Commissioner does not even have the authority to transfer *sentenced* inmates from jails to MCI-Cedar Junction.  Mass. Gen. Laws ch. 127, § 97 specifically disallows transfers of sentenced inmates from a county jail to "the state prison," *i.e.*, MCI-Cedar Junction. In light of the limitation of § 97, Mass. Gen. Laws. ch. 276, § 52A cannot be read to allow transfer of pretrial detainees to MCI-Cedar Junction without judicial proceedings.

79.     By confining Mr. Ford to MCI-Cedar Junction without regard for the appropriateness of such confinement and without affording him the opportunity for judicial review regarding the appropriateness of this confinement, the DOC Defendants and Defendant Bellotti violated Mr. Ford's procedural due process rights.

80.     By confining Mr. Ford to the DDU without regard for the appropriateness of such confinement and without affording him the opportunity for any type of review of the appropriateness of this confinement, the DOC Defendants violated Mr. Ford's procedural due process rights.

## COUNT FOUR

**Procedural Due Process Under Articles 1, 10, and 12 of the Massachusetts Declaration of Rights**

(Mass. Gen. Laws ch. 231A)

81.     Mr. Ford restates and realleges paragraphs 1-80 as if fully stated herein.

82.     By their policies, practices, acts, or omissions, the DOC Defendants violated Mr. Ford's right to procedural due process as guaranteed by Articles 1, 10, and 12 of the Massachusetts Declaration of Rights.

83.     Under Mass. Gen. Laws ch. 276, § 52A, the removal of a pretrial detainee to a state correctional institutional must be preceded by "proceedings."  Given the important constitutional issues at stake in such a determination, at a minimum, these proceedings must include an evidentiary hearing and findings of fact made by a justice of the Massachusetts Superior Court.

84.     The Commissioner does not even have the authority to transfer *sentenced* inmates from jails to MCI-Cedar Junction.  Mass. Gen. Laws ch. 127, § 97 specifically disallows transfers of sentenced inmates from a county jail to "the state prison," *i.e.*, MCI-Cedar Junction. In light of the limitation of § 97, Mass. Gen. Laws. ch. 276, § 52A cannot be read to allow transfer of pretrial detainees to MCI-Cedar Junction without judicial proceedings.

85.     By confining Mr. Ford to MCI-Cedar Junction without regard for the appropriateness of such confinement and without affording him the opportunity for judicial review regarding the appropriateness of this confinement, the DOC Defendants and Defendant Bellotti violated Mr. Ford's procedural due process rights under the Massachusetts Declaration of Rights.

86.     By confining Mr. Ford to the DDU without regard for the appropriateness of such confinement and without affording him the opportunity for any type of review of the appropriateness of this confinement, the DOC Defendants violated Mr. Ford's procedural due process rights under the Massachusetts Declaration of Rights.

<u>**COUNT FIVE**</u>

**Effective Assistance of Counsel Under the Sixth Amendment of the United States Constitution**

(42 U.S.C. § 1983)

87.     Mr. Ford restates and realleges paragraphs 1-86 as if fully stated herein.

US1DOCS 6730708v7

88.     By their policies, practices, acts, or omissions, the DOC Defendants, acting under color of state law, violated Mr. Ford's right to the effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution, as enforceable through 42 U.S.C. § 1983.

89.     By confining Mr. Ford in the DDU at MCI-Cedar Junction as a pretrial detainee, the DOC Defendants restricted his ability to communicate with his criminal counsel and to participate in his defense in violation of his Sixth Amendment right to effective assistance of counsel.

## COUNT SIX

**Effective Assistance of Counsel Under Article 12 of the Massachusetts Declaration of Rights and Mass. Gen. Laws ch. 263, § 5**

(Mass. Gen. Laws ch. 231A)

90.     Mr. Ford restates and realleges paragraphs 1-89 as if fully stated herein.

91.     By their policies, practices, acts, or omissions, the DOC Defendants, acting under color of state law, violated Mr. Ford's right to the effective assistance of counsel as guaranteed by Article 12 of the Massachusetts Declaration of Rights and Mass. Gen. Laws ch. 263, § 5.

92.     By confining Mr. Ford in the DDU at MCI-Cedar Junction as a pretrial detainee, the DOC Defendants restricted his ability to communicate with his criminal counsel and to participate in his defense in violation of his right to effective assistance of counsel as guaranteed by Article 12 of the Massachusetts Declaration of Rights and Mass. Gen. Laws ch. 263, § 5.

## COUNT SEVEN

**Equal Protection Clause of the Fourteenth Amendment of the United States Constitution**

(42 U.S.C. § 1983)

93.     Mr. Ford restates and realleges paragraphs 1-92 as if fully stated herein.

- 17 -

94.     Mass. Gen. Laws ch. 276, § 52A distinguishes between similarly-situated pretrial detainees based solely on the happenstance of whether "they have been previously incarcerated in a correctional institution of the commonwealth under sentence for a felony."

95.     Under Mass. Gen. Laws ch. 276, § 52A, a pretrial detainee who has served a felony sentence in a correctional institution of a state other than Massachusetts or in a federal correctional institution cannot be held in a Massachusetts state prison, while a pretrial detainee who has served a felony sentence in Massachusetts for a similar or less serious offense can be held in a Massachusetts state prison.  There is no rational basis for making such distinctions between pretrial detainees.

96.     On its face, Mass. Gen. Laws ch. 276, § 52A violates the equal protection clause of the Fourteenth Amendment because it is based on a classification scheme for which there is no rational basis and there are no circumstances in which it can be applied without improperly denying a pretrial detainee the equal protection of the laws.

97.     In addition, as applied to Mr. Ford, Mass. Gen. Laws ch. 276, § 52A violates the equal protection clause of the Fourteenth Amendment because it improperly denied Mr. Ford the equal protection of the laws based on a classification scheme for which there is no rational basis.

## COUNT EIGHT
### Equal Protection Under Articles 1 and 12 of the Massachusetts Declaration of Rights
(Mass. Gen. Laws ch. 231A)

98.     Mr. Ford restates and realleges paragraphs 1-97 as if fully stated herein.

99.     Mass. Gen. Laws ch. 276, § 52A distinguishes between similarly-situated pretrial detainees based solely on the happenstance of whether "they have been previously incarcerated in a correctional institution of the commonwealth under sentence for a felony."

US1DOCS 6730708v7

100.     Under Mass. Gen. Laws ch. 276, § 52A, a pretrial detainee who has served a

felony sentence in a correctional institution of a state other than Massachusetts or in a federal

correctional institution cannot be held in a Massachusetts state prison, while a pretrial detainee

who has served a felony sentence in Massachusetts for a similar or less serious offense can be

held in a Massachusetts state prison.  There is no rational basis for making such distinctions

between pretrial detainees.

101.     On its face, Mass. Gen. Laws ch. 276, § 52A violates Articles 1 and 12 of the

Massachusetts Declaration of Rights because it is based on a classification scheme for which

there is no rational basis and there are no circumstances in which it can be applied without

improperly denying a pretrial detainee the equal protection of the laws.

102.     In addition, as applied to Mr. Ford, Mass. Gen. Laws ch. 276, § 52A violates

Articles 1 and 12 of the Massachusetts Declaration of Rights because it improperly denied Mr.

Ford the equal protection of the laws based on a classification scheme for which there is no

rational basis.

## COUNT NINE
### "Infamous Punishment" Under Article 12 of the Massachusetts Declaration of Rights
(Mass. Gen. Laws ch. 231A)

103.     Mr. Ford restates and realleges paragraphs 1-102 as if fully stated herein.

104.     Under Article 12 of the Massachusetts Declaration of Rights, the legislature is

prohibited from making "any law, that shall subject any person to a capital or infamous

punishment . . . without trial by jury."  Mass. Gen. Laws Const. Pt. 1, Art. 12.

105.     MCI-Cedar Junction is defined as the "state prison" under Mass. Gen. Laws ch.

125, § 1(o).

106.     In *Brown v. Commissioner of Correction*, 394 Mass. 89 (Mass. 1985), the Supreme Judicial Court held that confinement in the state prison at Walpole (what is now MCI-Cedar Junction) constitutes "infamous punishment" for purposes of Article 12.  In reaching this conclusion, the *Brown* court affirmed the vitality of the rule announced in *Jones v. Robbins*, 8 Gray 329 (1857), that "'punishment in the state prison is an infamous punishment, and cannot be imposed without both indictment and trial by jury.'"  *Id.* at 92 (quoting *Jones*, 8 Gray at 349).

107.     By confining Mr. Ford to MCI-Cedar Junction – the state prison – as a pretrial detainee before he has been tried by a jury, the DOC Defendants and Defendant Bellotti have subjected Mr. Ford to "infamous punishment" in violation of Article 12 of the Massachusetts Declaration of Rights.

108.     As applied to Mr. Ford by the DOC Defendants and Defendant Bellotti, Mass. Gen. Laws ch. 276, § 52A violates Article 12 of the Massachusetts Declaration of Rights because it has subjected him to "infamous punishment . . . without trial by jury."

## COUNT TEN

### Mass. Gen. Laws ch. 276, § 52A

(Mass. Gen. Laws ch. 231A)

109.     Mr. Ford restates and realleges paragraphs 1-108 as if fully stated herein.

110.     Mass. Gen. Laws. ch. 276, § 52A by its terms applies only to detainees "held in jail for trial."  Because Mr. Ford was never "held in jail for trial" upon completion of his sentence in January 2007, § 52A did not provide a statutory basis for holding him in MCI-Cedar Junction at that time.  The Defendants therefore exceeded their statutory authority in violation of Mass. Gen. Laws. ch. 276, § 52A by holding Mr. Ford in MCI-Cedar Junction as a pretrial detainee.

US1DOCS 6730708v7

111.     Mass. Gen. Laws. ch. 276, § 52A by its terms only authorizes the Commissioner to cause detainees to be "removed" from a jail to another jail or, in some cases, from a jail to a "correctional institution."  Because Mr. Ford was not "removed" from any jail in January 2007, § 52A did not provide a statutory basis for holding him in MCI-Cedar Junction at that time.  The Defendants therefore exceeded their statutory authority in violation of Mass. Gen. Laws. ch. 276, § 52A by holding Mr. Ford in MCI-Cedar Junction as a pretrial detainee.

112.     Under Mass. Gen. Laws. ch. 276, § 52A, the removal of a pretrial detainee to a state correctional institution must be preceded by "proceedings."  Under § 52A, the "proceedings for such removals shall be the same as for the removal of prisoners from one jail or house of correction to another."  Given the important constitutional interests at stake in such a determination, these proceedings must, at a minimum, include an evidentiary hearing and findings of fact made by a justice of the Massachusetts Superior Court.

113.     The Commissioner does not even have the authority to transfer *sentenced* inmates from jails to MCI-Cedar Junction.  Mass. Gen. Laws ch. 127, §  97 specifically disallows transfers of sentenced inmates from a county jail to "the state prison," *i.e.*, MCI-Cedar Junction. In light of the limitation of § 97, Mass. Gen. Laws. ch. 276, § 52A cannot be read to allow transfer of pretrial detainees to MCI-Cedar Junction without judicial proceedings.

114.     By confining Mr. Ford to MCI-Cedar Junction without regard for the appropriateness of such confinement and without affording him the opportunity for judicial review regarding the appropriateness of this confinement, the DOC Defendants exceeded their statutory authority in violation of Mass. Gen. Laws. ch. 276, § 52A.

**COUNT ELEVEN**

**Mass. Gen. Laws ch. 127, § 20, ch. 125, § 14, and 103 CMR 420.08**

(Mass. Gen. Laws ch. 231A)

115.     Mr. Ford restates and realleges paragraphs 1-114 as if fully stated herein.

116.     Mass. Gen. Laws ch. 124, § 1(g) requires the Commissioner to "determine at the time of commitment, and from time to time thereafter, the custody requirements and program needs of each person committed to the custody of the department and assign or transfer such persons to appropriate facilities and programs."

117.     Pursuant to Mass. Gen. Laws ch. 124, § 1(g), the Department of Correction promulgated 103 CMR 420.  Section 420.08, at the time Mr. Ford completed his criminal sentence in January 2007, required that "[u]pon commitment to the Department of Correction, each inmate shall be admitted to a Reception Center where he or she will undergo an initial classification process."

118.     Mass. Gen. Laws ch. 127, § 20 requires that "[a]ny male convict who is sentenced to any correctional institution of the commonwealth … shall be delivered … to said [Reception] center for the purpose of proper classification of the prisoner."

119.     Because Mr. Ford was not "admitted to a Reception Center" or "delivered … to said center for the purpose of proper classification" when he was "committed to the custody of the department" in May 2008 when he was returned to the DDU in MCI-Cedar Junction, the DOC Defendants arbitrarily disregarded and failed to meet their non-discretionary regulatory duties under 103 CMR 420.08 and violated the requirements of Mass. Gen. Laws ch. 127, § 20 to the prejudice of Mr. Ford's rights.

120.    Mass. Gen. Laws ch. 125, § 14 provides that the superintendent of a Massachusetts correctional institution "shall govern and employ [prisoners] pursuant to their respective sentences until their sentences have been performed or they are otherwise discharged by the due course of law."

121.    Because the DOC Defendants have continued to "govern" Mr. Ford by confining him to the DDU as both a pretrial detainee and as a newly-sentenced inmate based on a DDU sanction imposed during a prior sentence, they have exceeded the authority granted under Mass. Gen. Laws ch. 125, § 14.

122.    By confining Mr. Ford in the DDU based on a DDU sanction imposed during Mr. Ford's prior criminal sentence, the DOC Defendants exceeded their statutory authority.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Ford respectfully requests that this Court:

a.    Enter judgment for Mr. Ford and against Defendants on all counts of this Complaint;

b.    Order that Mr. Ford be immediately released from the DDU;

c.    Declare that confining Mr. Ford to the DDU either as a pretrial detainee or as a sentenced inmate based on a DDU sanction received during a prior sentence violates the constitutions and laws of the United States and the Commonwealth of Massachusetts;

d.    Declare that as applied to Mr. Ford, Mass. Gen. Laws ch. 276, § 52A violates the constitutions and laws of the United States and the Commonwealth of Massachusetts because by allowing Mr. Ford to be confined to the state prison, it has subjected Mr. Ford to punishment as a pretrial detainee;

e.      Declare that confining Mr. Ford as a pretrial detainee to MCI-Cedar Junction pursuant to Mass. Gen. Laws ch. 276, § 52A without regard for the appropriateness of such confinement and without affording him the opportunity for judicial review regarding the appropriateness of this confinement violates the constitutions and laws of the United States and the Commonwealth of Massachusetts;

f.      Declare that on its face and as applied to Mr. Ford, Mass. Gen. Laws ch. 276 § 52A violates the equal protection clause of the Fourteenth Amendment and Articles 1 and 12 of the Massachusetts Declaration of Rights because it denies pretrial detainees the equal protection of the laws based on a classification scheme for which there is no rational basis;

g.      Declare that transferring Mr. Ford as a pretrial detainee to MCI-Cedar Junction under Mass. Gen. Laws ch. 276, § 52A violates Article 12 of the Massachusetts Declaration of Rights by imposing "infamous punishment . . . without trial by jury";

h.      Declare that confining Mr. Ford to MCI-Cedar Junction without regard for the appropriateness of such confinement and without affording him the opportunity for judicial review regarding the appropriateness of this confinement, the DOC Defendants exceeded their statutory authority in violation of Mass. Gen. Laws. ch. 276, § 52A;

i.      Declare that the failure of the DOC Defendants to classify Mr. Ford when he was sentenced in 2008, violated Mass. Gen. Laws ch. 120, § 1(g), ch. 127, § 20, and 103 CMR 420.08.

j.      Vacate the denials of Mr. Ford's grievance appeals regarding his confinement in the DDU at MCI-Cedar Junction;

       k.      Award to Mr. Ford damages against Defendants Clarke, Bender, St. Amand, and

Nelson sufficient to compensate Mr. Ford for violation of his rights under the United States

Constitution;

       l.      Award to Mr. Ford reasonable costs and attorney's fees pursuant to 42 U.S.C.

§ 1988; and

       m.      Grant such other and further relief as this Court considers just and proper.


ALBERT FORD
By his attorneys,

/s/ Lisa J. Pirozzolo_____
Lisa J. Pirozzolo, BBO # 561922
Michael D. Hoke, BBO # 670753
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
Tel:  (617) 526-6000
Fax:  (617) 526-5000

Dated:     July 11, 2008

## <u>CERTIFICATE OF SERVICE</u>

I, Michael D. Hoke, hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic court filing (ECF) system this 11th day of July, 2008; that a true copy of the above document was served by hand upon counsel for Michael Bellotti this 11th day of July, 2008; and that a true copy of the above document was served upon counsel for Harold Clarke and the Department of Correction by the Court's (ECF) system upon consent of counsel this 11th day of July, 2008.

/s/ Michael D. Hoke
Michael D. Hoke, BBO # 670753