UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALBERT FORD,<br><br>Plaintiff,<br><br>v.<br><br>JAMES BENDER, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 07-11457-JLT |

**PLAINTIFF ALBERT FORD'S MEMORANDUM IN**
**OPPOSITION TO MICHAEL BELLOTTI'S MOTION TO DISMISS**

## I. INTRODUCTION

In his Amended Complaint, plaintiff Albert Ford challenges his confinement in the Departmental Disciplinary Unit ("DDU") at MCI-Cedar Junction. Among other claims, Mr. Ford alleges that his continued confinement at MCI-Cedar Junction as a pretrial detainee pursuant to Mass. Gen. Laws ch. 276, § 52A violated his equal protection and due process rights under the United States Constitution and the Massachusetts Declaration of Rights. Significantly, defendant Michael Bellotti, as the Sheriff of Norfolk County, twice requested Mr. Ford's confinement in MCI-Cedar Junction under § 52A. Thus, the Amended Complaint alleges that Mr. Bellotti deprived Mr. Ford of his rights under an unconstitutional statute.

In his motion to dismiss, Mr. Bellotti does not address Mr. Ford's allegations of his involvement in this unconstitutional conduct, but argues only that his actions were justified by the provisions of § 52A as allegedly interpreted by the Massachusetts state courts. But such arguments fail to demonstrate that Mr. Ford's constitutional claims against Mr. Bellotti are legally insufficient and therefore do not support his dismissal from the case.

Also wide of the mark is Mr. Bellotti's contention that he should be dismissed because the relief Mr. Ford has sought does not affect him. In the Amended Complaint, Mr. Ford has sought a declaration that use of § 52A to secure Mr. Ford's confinement in MCI-Cedar Junction – employed twice by Mr. Bellotti – was unconstitutional.

## II. BACKGROUND

In early 2003, with less than four years remaining on his criminal sentence, Mr. Ford was given a disciplinary sanction of a ten-year confinement to the DDU at MCI-Cedar Junction, the state prison. Am. Compl. ¶¶ 12, 14. He was also indicted for the conduct that gave rise to the disciplinary sanction. Am. Compl. ¶ 13.

On January 2, 2007, five days before Mr. Ford was due to complete serving his criminal sentence, Mr. Bellotti's office wrote a letter to the Norfolk County District Attorney citing Mass. Gen. Laws ch. 276, § 52A and requesting that Mr. Ford be held in DOC custody pending trial on his indictment.[1] Am. Compl. ¶ 14. This request was granted *pro forma* on the same day. Am. Compl. ¶ 15. Despite having finished his criminal sentence on January 7, Mr. Ford remained in DOC custody in the DDU as a pretrial detainee until March 2007, when his family posted bail. Am. Compl. ¶¶ 17-18.

---

[1] Section 52A was originally enacted to allow the separation of persons charged with the same crime while awaiting trial and to relieve the resulting burden such obligations placed on county sheriffs. *See Comm'r of Correction v. Superior Court Dep't of the Trial Court*, 446 Mass. 123, 126 n.4 (Mass. 2006) (relating legislative history of § 52A). It has since been recognized as a means for county sheriffs to address jail overcrowding or detainee safety. *See id.* at 125 n.3 (acknowledging that transfers may be requested by a sheriff and be made for "security, detainee safety, or other capacity-related reasons"); *see also Attorney Gen. v. Sheriff of Suffolk County*, 394 Mass. 624, 626-27 (Mass. 1985) (Suffolk County Sheriff seeking injunction ordering Commissioner to accept transfers under 52A to reduce overcrowding).

On June 26, 2007, Mr. Ford's bail was revoked. Am. Compl. ¶ 19. That same day, Mr. Bellotti's office again requested under § 52A that Mr. Ford be returned to DOC custody, and this request was again immediately approved *pro forma*. Am. Compl. ¶¶ 20-21. Mr. Ford was returned to the DDU without ever being transferred to Norfolk County jail. Am. Compl. ¶ 22. He remains in the DDU today based on the disciplinary sanction he received during his previous sentence. *See* Am. Compl. ¶ 28.

Mr. Bellotti is generally charged by state statute to house Norfolk County detainees who cannot be released on bail. *See* Mass. Gen. Laws ch. 126, §§ 4, 16, and ch. 276, § 42 (prisoners not released on bail "shall be committed to jail"); *see also Comm'r of Correction*, 446 Mass. at 127 ("Unlike the county jails, the State correction system is not set up to accommodate the special needs of pretrial detainees.") (citing § 42). Because of Mr. Bellotti's requests under § 52A, Mr. Ford spent roughly *one year* in solitary confinement in the state's maximum security prison as a pretrial detainee. Am. Compl. ¶ 24.

## III. ARGUMENT

### A. Standard on Motion to Dismiss

To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1965 (2007). The "task is not to decide whether the plaintiff ultimately will prevail but, rather, whether he is entitled to undertake discovery in furtherance of the pleaded claim." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 13 (1st Cir. 2004).

Under Rule 8's liberal notice pleading requirements, Mr. Ford's allegations are sufficient to state a claim for deprivation of his constitutional rights because they "give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 127 S.Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

**B. Mr. Ford Has Properly Alleged That Mr. Bellotti Acted to Deprive Him of His Constitutional Rights**

Mr. Bellotti's motion to dismiss fails to acknowledge the claims that Mr. Ford has brought against him. Mr. Bellotti contends that he should be dismissed because he "did no more than he was authorized to do pursuant to § 52A," Bellotti Mem. at 5, and also suggests that if Mr. Ford believes his transfer "was not lawful under § 52A," that the Commissioner of Correction is the proper defendant, *id*. at 6. These arguments ignore the fact that Mr. Ford alleges that Mr. Bellotti's actions were improper because they caused Mr. Ford's unconstitutional transfers under § 52A. Mr. Ford further alleges that the procedures required under § 52A were not followed for his transfers. Thus, Mr. Bellotti's actions in causing § 52A to be unconstitutionally applied to Mr. Ford are at issue. Because Mr. Bellotti's arguments in his motion do not address the crux of Mr. Ford's complaint, he has failed to carry his burden of demonstrating that he should be dismissed.

Mr. Ford has pled sufficient facts to allege that Mr. Bellotti played a central role in Mr. Ford's unconstitutional transfers to MCI-Cedar Junction under § 52A. Mr. Ford first alleges that on January 2, 2007, five days before he was to conclude his 1992 sentence, Mr. Bellotti's office requested that the Norfolk County District Attorney's Office approve the continued confinement of Mr. Ford in the custody of the DOC pending his trial in Norfolk Superior Court, pursuant to § 52A. Am. Compl. ¶ 14. Mr. Ford goes on to allege that this request resulted in his continued detention at MCI-Cedar Junction. *See* Am. Compl. ¶¶ 15-17. Mr. Ford similarly alleges that on June 26, 2007, the same day that Mr. Ford's bail was revoked, Mr. Bellotti's office again requested of the Norfolk County District Attorney's Office that Mr. Ford be held by the DOC

rather than Mr. Bellotti. Am. Compl. ¶ 20. Mr. Ford then again alleges that this request resulted in his continued confinement in MCI-Cedar Junction as a pretrial detainee. *See* Am. Compl. ¶¶ 21-24. Notably, Mr. Bellotti does not dispute Mr. Ford's central allegation against him, conceding that he "request[ed] that the Plaintiff be transferred to state custody awaiting trial." Bellotti Mem. at 6.

These allegations are sufficient to show that Mr. Bellotti's requests resulted in Mr. Ford's unlawful confinement as a pretrial detainee in MCI-Cedar Junction. As a result, Mr. Bellotti is properly named as a defendant even if he only requested, but did not determine, whether Mr. Ford would be transferred under § 52A. There is no requirement that a defendant in a case involving a constitutional challenge possess ultimate authority under the statute; rather, it is enough that the defendant's actions were predicated on the statute at issue. This was the holding of the court in *Reynolds v. Dukakis*, 441 F.Supp. 646 (D. Mass. 1977), where a Coast Guard veteran honorably discharged as a conscientious objector challenged a Massachusetts statute that denied classification as a "veteran" under Massachusetts law to anyone discharged as a conscientious objector. As a result of this statute, the plaintiff was denied certification as a "veteran" and therefore precluded from the tuition exemption provided by Massachusetts law for veterans. *Id*. at 649. In turn, the plaintiff was billed for tuition by the University of Massachusetts where he was enrolled and then threatened with dismissal for failure to pay. *Id*. The court held that the plaintiff had properly named the Chancellor of the Board of Higher Education as a defendant "because his action [in seeking tuition] is predicated, in part at least, on certification provided to him under the legislative scheme." *Id*. at 650. The same is true here – Mr. Bellotti's requests that Mr. Ford be held in DOC custody were predicated on § 52A and thus he is a proper party.

Mr. Ford has therefore properly alleged seven counts against Mr. Bellotti. These include, in Counts Seven and Eight, that as applied to Mr. Ford, § 52A violated his rights under the equal protection clause of the Fourteenth Amendment of the United States Constitution and Articles 1 and 12 of the Massachusetts Declaration of Rights because, without a rational basis, it distinguished between Mr. Ford as a pretrial detainee who had served a felony sentence in a Massachusetts state prison and those who have served a felony sentence in any other prison. Am. Compl. ¶¶ 93-102.[2]

Similarly, in Count Nine, Mr. Ford alleges that the application of § 52A, as initiated by Mr. Bellotti, violated the prohibition in Article 12 of the Massachusetts Declaration of Rights that the legislature shall not make "any law, that shall subject any person to a capital or infamous punishment . . . without trial by jury" because the Supreme Judicial Court held in *Brown v. Commissioner of Correction*, 394 Mass. 89 (Mass. 1985), that confinement in the state prison at Walpole (what is now MCI-Cedar Junction) constitutes "infamous punishment." Am. Compl. ¶¶ 103-108. Here, Mr. Ford is entitled to the reasonable inference that Mr. Bellotti was aware that his request for the DOC to maintain custody of Mr. Ford would result in his continued confinement in MCI-Cedar Junction. *See SFW Arecibo, Ltd. v. Rodriguez,* 415 F.3d 135, 139 (1st Cir. 2005) (on a motion to dismiss a court must "draw[] all reasonable inferences in the non-movants' favor"). And given that Mr. Ford had been held in MCI-Cedar Junction after Mr. Bellotti's first such request, this presumption is particularly appropriate for the second request.

Finally, in Counts One, Two, Three and Four, Mr. Ford has properly alleged that Mr. Bellotti acted to deprive Mr. Ford of his due process rights under the Fourteenth Amendment of

---

[2] Although Counts Seven and Eight do not specifically name Mr. Bellotti, the allegations make plain that his conduct in seeking the application of § 52A to Mr. Ford is at issue.

the United States Constitution and Articles 1, 10, and 12 of the Massachusetts Declaration of Rights because he initiated transfers of Mr. Ford under § 52A that subjected Mr. Ford to improper punishment and were carried out without any judicial determination of their appropriateness.[3]

Mr. Bellotti's reliance on *MacDougall v. Commonwealth*, 447 Mass. 505 (Mass. 2006), is misplaced. In *MacDougall* a pretrial detainee sought extraordinary relief in his criminal case under Mass. Gen. Laws ch. 211, § 3, contending that his transfer from a county jail to a state correctional facility violated the provisions of § 52A and that his transfer and the conditions of his confinement violated his rights under the United States and Massachusetts constitutions. But the *MacDougall* court held only that the process under which MacDougal was transferred complied with the provisions of § 52A and explicitly declined to address his constitutional arguments involving the validity of the statute itself. *Id*. at 510-12.[4] The court concluded that "questions of the condition of his confinement or the validity of his transfer . . . are ancillary to the question of his guilt or innocence on the underlying criminal charges" and instead should be addressed in a civil action where a full record could be developed. *Id*. at 512.[5] And while the court observed that a civil action against the Commissioner of Correction could be a proper means by which to challenge the process of a transfer under § 52A, it in no way foreclosed

---

[3] Moreover, it is not yet clear without discovery what prompted Mr. Bellotti's office's requests that Mr. Ford remain or be placed in DOC custody.

[4] Further, the process of the transfer at issue in *MacDougall* was not the same as the process used for Mr. Ford. Unlike the plaintiff in *MacDougall*, Mr. Ford was never held in a county jail before the transfer was requested and carried out as is required under § 52A.

[5] Even if *MacDougall* had addressed the constitutional issues on the merits, this Court would not be bound by the Supreme Judicial Court's determinations regarding federal law. *See Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 917 (1st Cir. 1988) ("a state court interpretation of federal law is, of course, not binding authority on the federal courts").

including other parties, such as a county sheriff who initiated the transfer, in such an action. *See id.* at 511.[6] Thus, contrary to Mr. Bellotti's contention, *MacDougall* does not address the validity of the constitutional claims Mr. Ford has brought against Mr. Bellotti.

Because Mr. Bellotti fails to address the legal sufficiency of the claims against him in any meaningful manner, his dismissal motion must fail.

### C. Mr. Bellotti is Properly Named as a Necessary Party to this Action Because the Relief Sought Will Affect His Interests

Mr. Bellotti asserts that he should be dismissed because Mr. Ford does not seek any relief that would implicate him. Bellotti Mem. at 7. But this is not so. To the extent that Mr. Bellotti has asserted an interest related to the action, and his ability to protect that interest would be impaired in his absence, he is required to be named as a party in this action. *See* Fed. R. Civ. P. 19(a)(1)(B)(i).[7] Similarly, Mass. Gen. Laws ch. 231A, § 8 requires his presence to the extent he has or claims an interest that would be affected by the declarations sought by Mr. Ford.[8] And thus far, Mr. Bellotti has demonstrated such an interest in a declaration that Mr. Ford's transfers

---

[6] In addition, unlike in Mr. Ford's case, it is not clear that the county sheriff even played a role in the transfer at issue in *MacDougall*; rather, it appears the transfer was undertaken solely at the direction of the Commissioner. *See id.* at 507 (noting that MacDougall "was transferred by the commissioner" without mention of any other party requesting his transfer).

[7] Rule 19 is interpreted broadly in the First Circuit to encompass parties who merely "appear[] to have such an interest," even if they do not assert such an interest, unless they have disclaimed any interest in the litigation. *Tell v. Trustees of Dartmouth College*, 145 F.3d 417, 419 & n.2 (1st Cir. 1998); *see also EEOC v. The Int'l Brotherhood of Electrical Workers (I.B.E.W.) and Its Local 103*, 476 F. Supp. 341, 350 (D. Mass. 1979) (disclaimer of interest renders joinder under Rule 19 inappropriate).

[8] Section 8 reads in relevant part: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

under § 52A violated both the United States Constitution and the Massachusetts Declaration of Rights.

Mr. Bellotti has twice requested that Mr. Ford remain or be placed in DOC custody rather than housing him in the Norfolk County jail. Am. Compl. ¶¶ 14, 20. And Mr. Bellotti cites *Commissioner of Correction v. Superior Court Dept. of the Trial Court*, 446 Mass. 123, 125 n.3 (Mass. 2006), for the proposition that such requests under § 52A for transfer of a detainee to DOC custody may properly originate from a sheriff. Bellotti Mem. at 5. Under this Circuit's broad reading of Rule 19, *see supra* note 7, Mr. Bellotti has asserted an interest relating to the subject of this action – the ability to request and secure transfer of previously convicted detainees to DOC custody. That interest would be impaired by the declaration, which Mr. Ford has requested, that Mr. Bellotti's use of § 52A violated the Equal Protection clause of the federal constitution or Articles 1 and 12 of the Massachusetts Declaration of Rights. *See* Am. Compl. at 24, Prayer for Relief (f). Similarly, a declaration that Mr. Ford's transfers to MCI-Cedar Junction constituted improper punishment in violation of Article 12 of the Massachusetts Declaration of Rights would impair Mr. Bellotti's demonstrated interested in having the ability to request such transfers. *See* Am. Compl. at 24, Prayer for Relief (g).

Accordingly, Mr. Bellotti should not be dismissed because he is clearly an interested party.

## IV. CONCLUSION

For the foregoing reasons, Mr. Ford respectfully requests that Mr. Bellotti's motion be denied.

ALBERT FORD
By his attorneys,

/s/ Timothy D. Syrett

Lisa J. Pirozzolo, BBO # 561922
Timothy D. Syrett, BBO # 663676
Michael D. Hoke, BBO # 670753
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Dated: August 14, 2008

**CERTIFICATE OF SERVICE**

I, Michael D. Hoke, hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic court filing (ECF) system, this 14th day of August, 2008.

/s/ Michael D. Hoke
Michael D. Hoke BBO # 670753