UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 07-11457-JGD

---

|  |  |
|---|---|
| ALBERT FORD, | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| MASSACHUSETTS DEPARTMENT OF | ) |
| CORRECTION; HAROLD CLARKE, | ) |
| COMMISSIONER OF CORRECTION; | ) |
| JAMES BENDER, DEPUTY COMMISSIONER | ) |
| OF CORRECTION; PETER ST. ARMAND, | ) |
| SUPERINTENDENT OF MCI-CEDAR | ) |
| JUNCTION; KENNETH NELSON, ASSISTANT | ) |
| DEPUTY COMMISSIONER OF CORRECTION; | ) |
| MICHAEL BELLOTTI, NORFOLK COUNTY | ) |
| SHERIFF, | ) |
| Defendants. | ) |

---

**MEMORANDUM OF LAW IN SUPPORT OF SUMMARY
JUDGMENT MOTION OF DEFENDANT, MICHAEL BALLOTTI, NORFOLK
COUNTY SHERIFF**

**I.   INTRODUCTION**

On July 31, 2007, the plaintiff, Albert Ford ("Ford") brought an Amended Complaint challenging his confinement in the Departmental Disciplinary Unit ("DDU") at MCI-Cedar Junction. Ford was a pretrial detainee at the time he brought his Amended Complaint and alleged that his transfer under M.G.L. c.276, §52A ("52A") to, and confinement in, the DDU violated his federal and state constitutional rights, was in violation of the statute and applicable regulations, and that §52A as applied to him was unconstitional.

Ford named as defendants the Massachusetts Department of Corrections ("DOC"); Harold Clarke, the current Commissioner of Correction; James Bender, the Interim Commissioner of Correction; Kenneth Nelson, the Assistant Deputy Commissioner of the DOC; Peter St. Amend, the Superintendent at MCI-Cedar Junction, (collectively the "DOC Defendants"); and Michael Bellotti, the Sheriff of Norfolk County. The claims against the individual DOC defendants are brought both in their individual and official capacities; plaintiff seeks monetary damages against these individual defendants. Michael Bellotti is named as a Defendant solely in his official capacity; monetary damages are not sought from him.

On or about July 31, 2008, Bellotti filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On March 24, 2009, this Court denied defendant Bellotti's motion without prejudice finding, inter alia, that further development of the record was appropriate.

Defendant Bellotti brings his Motion for Summary Judgment after that further development of the record, based on which he claims that there are no disputed issues of fact as to him and that he is entitled to judgment as a matter of law.

## II.   UNDISPUTED FACTS

In 1992, Ford was sentenced to a term of incarceration of 15 to 25 years as a result of a felony conviction in Middlesex Superior Court. Ford was incarcerated at MCI-Cedar Junction.

In or about July of 2002, while serving his sentence and while being housed in the Department Disciplinary Unit [1] at MCI-Cedar Junction, Ford assaulted two (2) corrections

---

[1] The DDU was opened in 1992 to house inmates guilty of serious disciplinary infractions.

officers and took a nurse hostage.  Still in 2002, Ford was indicted in Norfolk County[2] for the July incident.

In January of 2003, the DOC conducted a disciplinary hearing as a result of the July incident.  Sometime in 2003 following that hearing, Ford received a ten (10) year DDU sanction.

On January 2, 2007, shortly before Ford was to complete serving his 1992 sentence, defendant Bellotti's office requested that the Norfolk County District Attorney's office approve the continued confinement of Ford in the custody of the DOC pending his trial in Norfolk Superior Court, pursuant to G.L. c. 276, §52A.  Defendant Bellotti made this request because plaintiff had been charged with a serious crime, assaulting a corrections officer, and was already incarcerated in a state facility.

The Norfolk County District Attorney's office granted the request of Defendant Bellotti.

On or about January 6, 2007, Ford was released from the sentence he began serving in 1992 pursuant to his Good Conduct Discharge date.

Ford remained, however, in the custody of the DOC and remained in the DDU at MCI-Cedar Junction while awaiting trial on the pending charge.  Defendant Bellotti had no knowledge that Ford would be confined to MCI Cedar Junction or be housed in the DDU when the request of January 2, 2007 was made.

Ford was released from DOC custody on bail on or about March 2, 2007.  While out on bail, the DOC discovered evidence that Ford mailed a package of contraband to an inmate at MCI-Cedar Junction.  On or about June 26, 2007, Ford's bail was revoked.

On June 26, 2007, Defendant Bellotti wrote to the Norfolk County District Attorney's office seeking approval pursuant to G.L. c. 276, §52A that Ford be held in the custody of the

---

[2] The indictment included counts for Assault & Murder, Assault & Battery on a police officer, Assault & Battery with a dangerous weapon, and kidnapping.

DOC pending trial. On that same day, the Norfolk County District Attorney's Office granted the request.

On June 26, 2007, Ford was returned to the custody of the DOC pending trial. Ford was placed by the DOC in the DDU at MCI-Cedar Junction. Defendant Bellotti had no knowledge that Ford would be assigned to MCI-Cedar Junction or the DDU when the request of June 26 was made.

On or about May 1, 2008, Ford pled guilty to certain of the offenses for which he was indicted in 2002 and received a sentence of four (4) to five (5) years. After his guilty plea, Ford remained housed in the DDU at MCI-Cedar Junction where he remains to this day.

### III.   ARGUMENT

#### A.   **INTRODUCTION**

After full development of the record, it is more clear than ever that Sheriff Bellotti did nothing more than exercise his statutory right to request that the District Attorney approve the transfer of plaintiff Ford to state custody; it is more clear than ever that plaintiff Ford seeks no specific relief from Sheriff Bellotti and that should he be successful in this matter, plaintiff can and will receive full and complete relief from the DOC defendants. For these reasons, as more fully developed, infra, defendant Bellotti respectfully submits that his summary judgment motion must be granted.

#### B.   **DEFENDANT BELLOTTI DID NOTHING MORE THAN REQUEST PLAINTIFF FORD'S TRANSFER PURSUANT TO §52A.**

Massachusetts General Laws chapter 276, §52A, provides in pertinent part as follows:

§52A. Removal of accused person to another county or to a correctional institutional; return; proceedings; costs

4

> Persons held in jail for trial, may, with the approval of the district attorney, and shall, by order of a justice of the superior court, be removed by the commissioner of correction to a jail in another county, and said commissioner shall, at the request of the district attorney, cause them to be returned to the jail whence they were removed.  In addition, such persons, if they have been previously incarcerated in a correctional institution of the commonwealth under sentence for a felony, may, with the approval of the district attorney, be removed by the commissioner of correction to a correctional institution of the commonwealth, and said commissioner shall, at the request of the district attorney, cause them to be returned to the jail whence they were awaiting trial....

As the statute and court decisions make clear, the transfer of a detainee from a jail to a state correctional facility lies within the discretion of the district attorney. Commissioner of Correction v. Superior Court Dept. of the Trial Court, 446 Mass. 123, 125 (2006).  In this case, the Commissioner of Correction contested the transfer of detainees from the Worcester County Jail to a state correctional facility ordered by a justice of the Superior Court.  The SJC overruled the order of the Superior Court justice, holding that this type of transfer requires only the approval of the district attorney and the authorization of the Commissioner of Correction.  The SJC further noted that "requests that certain pretrial detainees be transferred could come from a variety of sources including the district attorney, the sheriff, or the commissioner, and might be made for security, detainee safety, or other capacity-related reasons." [3]  Id. at 125, n.3.

In the instant matter, the Sheriff of Norfolk County did no more than he was authorized to do pursuant to §52A, namely make a request of the Norfolk County District Attorney that plaintiff be transferred to the custody of the DOC pending his trial because "...the Department of Corrections would be better suited for the housing of the inmate."  In accordance with the statute,

---

[3] Since virtually any official can make a request for transfer pursuant to §52A, it makes little sense that the mere making of such a request can subject that official to suit. After all, the statue requires the district attorney's office to approve or deny the request.  Yet, the plaintiff has failed to make the district attorney's office a party to the suit.  Further, the Commissioner of Correction must authorize the transfer. Accordingly, there are two (2) further layers before a request for transfer can, in fact, be effectuated.

5

the Sheriff has no authority to approve or authorize the transfer. In fact, it was the District Attorney's office which approved both the January 2, 2007, and June 26, 2007 requests.

The Supreme Judicial Court had occasion to interpret G.L.. c. 276 §52A as it applied to the transfer of a pretrial detainee, who had previously been incarcerated on felony charges, to a state correctional institution and held in disciplinary detention, the exact circumstance as alleged in Plaintiff's complaint. See MacDougall v. Commonwealth, 447 Mass. 505 (2006).

In MacDougall, plaintiff complained that his transfer and conditions of confinement violated his rights under both the Massachusetts and United States constitutions. Id., 447 Mass. 505, 506. Plaintiff had previously been sentenced for a felony, then while being held on a bail violation, he assaulted a corrections officer and was charged with further indictments for mayhem, assault and battery with a dangerous weapon, and related offenses. After the altercation, he was held in disciplianry detention as a result of his assaultive behavior and transferred to Cedar Junction.

The SJC found that where the plaintiff was formerly incarcerated in the state correction system and the transfer was approved by the District Attorney, the plaintiff's transfer to state custody was in accordance with G.L. c. 276, §52A. Further, the SJC held, to the extent that plaintiff raised claims that the conditions of confinement in the state correctional facility did not meet constitutional standards, "his remedy is to bring a civil action against the commissioner." Id. 447 Mass. at 511.

In his Opposition to Motion to Dismiss, plaintiff attempts to distinguish MacDougall by noting that he "was never held in a county jail before the transfer was requested and carried out or required under §52A". (See p. 7 at fn. 4 of Plaintiff's Opposition to Motion to Dismiss, Document 62 filed on August 14, 2008.) Defendant Bellotti submits this is a distinction without

a difference. The validity of Ford's transfer pursuant to §52A should not depend on the technicality of whether he was transferred first to a county jail and then returned to the state correctional facility.

Plaintiff further claims that <u>MacDougall</u> did not foreclose a claim against a county sheriff who initiated a transfer request simply because it observed that a civil action against the Commissioner of Correction could be proper to consider the validity of the transfer or the conditions of confinement. While perhaps true, <u>MacDougall</u> in no way suggests or implies that a civil action would properly lie against a county sheriff who does nothing more than request a transfer pursuant to §52A. First, unlike the district attorney's office or the Commissioner of Correction, the county sheriff has no responsibility under the statute for determining the validity of a transfer. That authority lies with the district attorney's office and the Commissioner of Correction.

Second, there is no evidence to establish that Sheriff Bellotti was aware that Ford would be assigned to the DDU as a pretrial detainee pursuant to the transfer request under §52A. In these circumstances, an action "comparable to an action challenging conditions of confinement"[4] should not lie against defendant Bellotti. Defendant Bellotti was and is not a party responsible for assigning Ford to the DDU. Indeed, there is no evidence to demonstrate that Defendant Bellotti was aware that Ford would be assigned to the DDU when his request for transfer to a state correctional facility was approved.

Finally, plaintiff claims that the case of <u>Reynolds v. Dukakis</u>, 441 F. Supp. 646 (D. Mass. 1977) supports his theory that Defendant Bellotti can be liable because his action in requesting a transfer was predicated on the allegedly unconstitutional statute. (See, Plaintiff's Memorandum

---

[4] Quote from Order on Motion of Defendant Michael Bellotti to Dismiss dated March 24, 2009, Document 75 at pp. 7-8.

in Opposition to Motion to Dismiss, Document 62 at p. 5).  In Reynolds v. Dukakis, the plaintiff challenged a Massachusetts statute that denied classification as a "veteran" to anyone discharged as a conscientious objector.  Plaintiff was denied the tuition exemption provided veterans under Massachusetts law as a result of the challenged statute.  Plaintiff was billed for tuition by the University of Massachusetts and threatened with dismissal for failure to pay.  The Court found that the Chancellor of the Board of Education was a property party because the Board had administrative responsibility for the tuition exemption and was seeking tuition from the plaintiff based upon the allegedly unconstitutional statute.  This is vastly different from the responsibilities of the defendant Bellotti herein.

Defendant Bellotti has no administrative responsibilities under §52A.  Presumably, if a pretrial detainee were entitled to any procedural rights under §52A, it would be the district attorney and/or the Commissioner of Correction who would have responsibility for administering any such procedures.  If anything, therefore, Reynolds v. Dukakis supports Defendant Bellotti's view that no declaration of rights under §52A can issue in the absence of the district attorney. (See Section D, *infra*)

    C.    **NO MONNELL CLAIM LIES AGAINST DEFENDANT BELLOTTI**

In Monnell v. New York City Dept. of Social Services, 436 U.S. .658 (1978), the Court held that municipalities could be liable for injuries inflicted pursuant to government "policy or custom".  436 U.S. at 694.  In order to make a claim grounded upon an unconstitutional custom or practice, plaintiff must meet two (2) requirements.  First, the custom or practice must be "so well settled and widespread that the policy making officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."

Bordanaro v. McLeod, 871 F.2d 1151, 1156 (lst Cir. 1989). Evidence of a single event along cannot establish a municipal custom or policy. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-23 (1985). Second, the municipal custom must have been the "moving force" behind the plaintiff's injuries, i.e., there must be an "affirmative link" between the custom and the constitutional deprivation. 871 F.2d at 1157 and cases cited thereat. Plaintiff's Monnell claim fails to meet either requirement.

Thus, the only evidence of custom or policy that plaintiff Ford offers is that defendant Bellotti twice requested his transfer to a state correctional facility pursuant to §52A. Defendant Bellotti submits that these two (2) requests, both premised on the good faith belief that safety and security reasons justified the request, fall well short of establishing a municipal custom and policy. Oklahoma City v. Tuttle, supra.

Moreover, there is no evidence that defendant Bellotti knew that plaintiff Ford would be housed in the DDU when he made his transfer requests pursuant to §52A. Accordingly, defendant Bellotti submits that the "custom" or "policy" was not the "moving force" or direct causal link to the alleged constitutional deprivation. Bordanaro v. McLeod, *supra*. For both these reasons, plaintiff's Monnell claim fails.

### D. **PLAINTIFF FORD IS NEITHER SEEKING NOR ENTITLED TO ANY SPECIFIC RELIEF AGAINST DEFENDANT BELLOTTI**

While plaintiff Ford seeks various statutory and constitutional declarations (Prayer for Relief, Paragraphs C-I), plaintiff does not seek a declaration that defendant Bellotti violated his constitutional or statutory rights by requesting of the District Attorney's Office that he be transferred to custody pending trial. Nor does plaintiff request that he be awarded damages against defendant Bellotti (Prayer for Relief, paragraph k).

Additionally, plaintiff Ford may not presently seek his return to the Norfolk House of Corrections. Since his plea of guilty in May of 2008, he is no longer a pretrial detainee. Rather, he is properly in the custody of the DOC.

Finally, plaintiff Ford claims that defendant Bellotti is a proper party because he has an interest in the ability to request and secure the transfer of previously convicted detainees to DOC custody pursuant to §52A. While defendant Bellotti agrees that he has some interest in requesting transfers pursuant to §52A, a declaration of rights concerning §52A may not issue in this proceeding because not all interested parties affected by any such declaration are parties to this proceeding. See M.G.L. c. 231A, §8 which requires that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration...."

Since transfer requests under §52A must be approved by the district attorney's office, it is beyond doubt that the district attorney would have an interest in the issue of what, if any, procedural rights a pretrial detainee would have before the district attorney can approve a transfer request pursuant to §52A.[5] Similarly, the district attorney would have an interest in any declaration that the use of §52A to secure plaintiff's confinement in MCI-Cedar Junction or the DDU was unconstitutional. Thus, in the absence of a necessary party, no declaration of rights under §52A may issue. Cf. Commonwealth v. Mass. Electric Company, 347 Mass. 781 (1964) (bill for declaratory relief dismissed since Department of Public Utilities not made a party and has an interest which would be effected); See Also Ward v. Comptroller of the Commonwealth, 345 Mass. 183 (1982) (Commonwealth was interested party whose rights not fully represented by the comptroller).

---

[5] Plaintiff alleges that the procedures required under §52A for his transfers were not followed. (Plaintiff's Memorandum in Opposition to Motion to Dismiss, Document 62, at p.,4).

10

## CONCLUSION

Based upon the foregoing, and the entire record, defendant Michael Bellotti respectfully submits that he is entitled to judgment as a matter of law dismissing all counts of the Amended Complaint against him.

Dated: September 14, 2009

> Respectfully submitted,
>
> By:  */s/ Mary Jo Harris*
> Mary Jo Harris (BBO#561484)
> Nathan L. Kaitz (BBO#256760)
> Morgan, Brown & Joy, LLP
> 200 State Street, 11th Floor
> Boston, MA  02109
> T: (617) 523-6666
> F: (617) 367-3125

### Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 14, 2009.

> */s/ Nathan L. Kaitz*
> Nathan L. Kaitz