IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALBERT FORD,<br><br>             Plaintiff,<br><br>v.<br><br>JAMES BENDER, et al.<br><br>             Defendants. | Civil Action No. 07-11457-JGD |

**PLAINTIFF ALBERT FORD'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Albert Ford respectfully submits the following Statement of Undisputed Facts pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 in support of his Motion for Partial Summary Judgment. No genuine issue exists as to the following material facts:

**Defendant James Bender**

1.      James Bender is currently Deputy Commissioner of the Prison Division of the Massachusetts Department of Correction ("DOC"), a position to which he was appointed in 2008. (Bender Dep. at 21:23-22:24 (Chaudhary Aff. Ex. A).)[1] Before his appointment in 2008, he served as acting Deputy Commissioner from 2003 until April 2007, when he was appointed acting Commissioner of Corrections, a position in which he served until November 2007, when he reverted back to serving as Deputy Commissioner. (Bender Dep. at 22:23-22:24 (Chaudhary Aff. Ex. A).)

2.      Apart from the period when he served as acting Commissioner of Correction, and

---

[1] "Chaudhary Aff." refers to the Affidavit of Dimple Chaudhary and exhibits attached thereto submitted in support of Plaintiff Albert Ford's Motion for Partial Summary Judgment, which is filed concurrently herewith.

therefore assumed additional responsibilities, Mr. Bender's responsibilities have remained largely the same from 2003 to the present despite the changes in job titles. (Bender Dep. at 23:2-12 (Chaudhary Aff. Ex. A).) He is and has been in charge of overseeing the day-to-day operations of the DOC's correctional facilities, including being responsible for the care and custody of convicted inmates, pretrial detainees and inmates who are civilly committed. (Bender Dep. at 25:5-20; 26:6-9 (Chaudhary Aff. Ex. A).) Mr. Bender also is responsible for the Central Inmate Disciplinary Unit, which administers all disciplinary hearings for inmates in the DOC. (Bender Dep. at 27:11-28:6 (Chaudhary Aff. Ex. A).)

### The Departmental Disciplinary Unit

3. The Departmental Disciplinary Unit ("DDU") is a disciplinary segregation unit at the Massachusetts Correctional Institute Cedar Junction ("MCI-Cedar Junction"). (Bender Dep. at 31:10-17 (Chaudhary Aff. Ex. A).)

4. Under DOC policy, inmates can be confined in the DDU only upon being found guilty of a disciplinary infraction warranting DDU placement. (Bissonnette Dep. at 23:3-24:21 (Chaudhary Aff. Ex. B).) The DDU is intended to punish inmates who have committed serious disciplinary infractions and also to deter inmates from doing so. (Bender Dep. at 35:24-36:10; 38:2-38:14 (Chaudhary Aff. Ex. A); Bissonnette Dep. at 60:4-7; 61:15-62:3 (Chaudhary Aff. Ex. B); Mitchell Dep. at 84:7-13; 88:1-13 (Chaudhary Aff. Ex. E).)

5. DDU inmates are confined to a cell that measures approximately seven by twelve feet for at least 23 hours a day. (Bender Dep. at 181:4-10 (Chaudhary Aff. Ex. A).) There is a window in the metal door and a window in the back of the cell that are approximately 18 to 24 inches long and 8 to 10 inches wide. Cells contain a cement bed, a cement desk, a cement stool, a small cement shelf, a mirror, a sink, and a toilet. (Bissonnette Dep. at 30:5-31:23 (Chaudhary

- 3 -

Aff. Ex. B).) Because the toilet is located near the front of the cell, an inmate is visible through the window in the door when using it but is prohibited from covering the window to afford himself privacy. (Bissonnette Dep. at 32:5-16 (Chaudhary Aff. Ex. B).)

6. Inmates in the DDU are permitted a maximum of one hour of exercise each weekday, which they must spend locked in a chain link cage. (Bender Dep. at 179:11-12; 181:11-14 (Chaudhary Aff. Ex. B); Ford Dep. at 27:8-10 (Chaudhary Aff. Ex. C).)

7. All meals are eaten alone in the DDU cell with food provided through a slot; inmates have twenty minutes to eat. (Bissonnette Dep. at 38:10-18 (Chaudhary Aff. Ex. B).)

8. After 120 days without receiving a disciplinary report, DDU inmates can earn the privilege of having a maximum of four one-hour visits per month from family and friends. These visits are non-contact; the DDU inmate and visitors are separated by a glass partition. (Bissonnette Dep. at 42:6-43:5 (Chaudhary Aff. Ex. B).) Similarly, DDU inmates can make a maximum of four thirty-minute phone calls per month to family and friends, and those four calls are only permitted to inmates who go 120 days without receiving a disciplinary report. (Bissonnette Dep. at 44:13-20 (Chaudhary Aff. Ex. B).)

9. Anytime an inmate leaves his cell in the DDU, he is subjected to a strip search and also placed in full restraints, including handcuffs and leg restraints. (Bissonnette Dep. at 38:2-9; 38:19-39:1 (Chaudhary Aff. Ex. B).)

10. DDU inmates are prohibited from visiting MCI-Cedar Junction's main law library and instead are limited to using materials provided on a book cart. (Bissonnette Dep. at 45:21-46:10 (Chaudhary Aff. Ex. B).)

11. Pretrial detainees are treated no differently in the DDU than convicted inmates. (Bissonnette Dep. at 37:19-21 (Chaudhary Aff. Ex. B).)

US1DOCS 7233798v6

## Mr. Ford's First Period of Pretrial Confinement in the DDU

12. On January 17, 2003, while incarcerated at MCI-Cedar Junction, Mr. Ford received a sanction of ten years confinement in the DDU as a result of a DOC disciplinary hearing. Among the reasons the Special Hearing Offer gave for Mr. Ford's sanction was the conclusion that "Not only did Inmate Ford violate Department of Corrections rules, he violated the laws of the Commonwealth as well." (Chaudhary Aff. Ex. H [Disciplinary Hearing Summary], at 4C.)

13. Mr. Ford was indicted in Norfolk County for the incident for which he received the DDU sanction. (*See* Mem. of Law in Support of DOC Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, Jan. 10, 2008, Docket No. 32, at 8; *see also* Ford Dep. at 39:7 (Chaudhary Aff. Ex. C).)

14. On January 2, 2007, four days before Mr. Ford was to complete serving his criminal sentence, the office of Norfolk County Sheriff Michael Bellotti requested, pursuant to Mass. Gen. Laws ch. 276, § 52A ("Section 52A"), that the Norfolk County District Attorney's Office approve the continued confinement of Mr. Ford in the custody of the DOC pending his trial in Norfolk Superior Court. (Chaudhary Aff. Ex. J [Jan. 2, 2007 Robert Harnais letter]; Mici Dep. at 71:13-74:10 (Chaudhary Aff. Ex. D).)

15. On January 2, 2007, the Office of the District Attorney for Norfolk County granted Sheriff Bellotti's request. (Chaudhary Aff. Ex. K [Jan. 2, 2007 Dennis Mahoney letter]; Mici Dep. at 72:17-73:9 (Chaudhary Aff. Ex. D).)

16. Carol Mici, the Assistant Deputy Commissioner of the DOC's Classification division, received copies of the correspondence between the Norfolk County District Attorney's Office and Sherriff Bellotti's office and accepted Mr. Ford as a pretrial detainee under Section

- 5 -

52A.  (Mici Dep. at 71:13-73:16; 83:12-84:12 (Chaudhary Aff. Ex. D).)  Ms. Mici emailed Mr. Bender and other DOC personnel to inform them of her decision to accept Mr. Ford as a pretrial detainee.  (Mici Dep. at 73:17-24 (Chaudhary Aff. Ex. D).)

17.     It was standard practice for Mr. Bender, as deputy commissioner, to be consulted about the decision to accept the custody of a "high profile" inmate such as Mr. Ford under Section 52A.  (Bender Dep. at 55:2-23 (Chaudhary Aff. Ex. A).)  Mr. Bender had the authority to overrule Ms. Mici's determination to accept Mr. Ford as a pretrial detainee if he had wished to do so.  (Bender Dep. at 97:18-98:4, 98:15-19 (Chaudhary Aff. Ex. A); Mici Dep. at 75:19-76:13 (Chaudhary Aff. Ex. D).)

18.     Mr. Bender testified that that he was ultimately responsible for the decision to accept Mr. Ford's custody under Section 52A and as well as Mr. Ford's placement in the DDU.  (Bender Dep. at 99:12-14 (Chaudhary Aff. Ex. A).)

19.     Mr. Bender determined that Mr. Ford should be confined in the DDU as a pretrial detainee in January 2007 to continue the 2003 DDU sanction issued during Mr. Ford's now-expired criminal sentence.  (Bender Dep. at 99:4-14 (Chaudhary Aff. Ex. A); Defendant James Bender's Answers to Plaintiff Albert Ford's First Set of Interrogatories (hereinafter "Bender First Interrogatory Answers"), Response No. 1 at p. 2 (Chaudhary Aff. Ex. L).)

20.     Mr. Bender intended Mr. Ford's January 2007 DDU pretrial detention as punishment for the same conduct for which Mr. Ford was being held awaiting trial.  (Bender Dep. at 44:14-20; 100:10-101:04; 102:13-17; 147:10-148:3 (Chaudhary Aff. Ex. A).)

21.     In making his determination about the appropriate pretrial housing for Mr. Ford in January 2007, Mr. Bender relied on his "general knowledge" about Mr. Ford.  (Bender Dep. at 101:10-12 (Chaudhary Aff. Ex. A.).)  Mr. Bender estimated that he has similar "general

knowledge" of hundreds of inmates sufficient to allow him to make housing determinations for them as he made for Mr. Ford.  (Bender Dep. at 101:17-102:12 (Chaudhary Aff. Ex. A.).)  Mr. Bender did not speak with either the Superintendent of MCI-Cedar Junction or the head of the DDU, both of whom would have had more knowledge about Mr. Ford than Mr. Bender did based on their day-to-day interaction with Mr. Ford.  (Bender Dep. at 107:13-109:1 (Chaudhary Aff. Ex. A.).)  In fact, Mr. Bender did not recall speaking with anyone else at the DOC about the placement of Mr. Ford in the DDU.  (Bender Dep. at 98:23-99:3 (Chaudhary Aff. Ex. A).)  Nor could Mr. Bender recall reviewing Mr. Ford's file before making the decision to place him in the DDU as a pretrial detainee.  (Bender Dep. at 101:5-9 (Chaudhary Aff. Ex. A).)

22.     The fact that Mr. Ford was a pretrial detainee did not in any way affect Mr. Bender's determination of where to house Mr. Ford in January 2007.  (Bender Dep. at 104:6-10 (Chaudhary Aff. Ex. A).)  Indeed, Mr. Bender did not even consider whether Mr. Ford's status as a pretrial detainee meant that he should be treated differently than convicted inmates.  (Bender Dep. at 104:11-15 (Chaudhary Aff. Ex. A).)  Mr. Bender also gave no consideration to whether the conditions in the DDU would allow Mr. Ford to prepare adequately to defend himself against his pending criminal charges, including making no effort to ascertain how much access the DDU would provide Mr. Ford to his counsel or to the prison's law library.  (Bender Dep. at 104:19-23, 106:8-20 (Chaudhary Aff. Ex. A).)

23.     On January 6, 2007, the DOC issued a Certificate of Discharge for Mr. Ford for his existing criminal sentence and he became a pretrial detainee held by the DOC pursuant to Section 52A.  (Mici Dep. at 63:5-15 (Chaudhary Aff. Ex. D); Chaudhary Aff. Ex. I (Certificate of Discharge, Ford Ex. 3).)

24.     Mr. Ford received no hearing regarding his continued placement in the DDU as a

pretrial detainee.  (Ford Dep. at 84:10-22; 86:11-18 (Chaudhary Aff. Ex. C); *see also* Bender Dep. at 99:4-101:16 (Chaudhary Aff. Ex. A).)

25. When a pretrial detainee held under Section 52A has time remaining on a DDU sanction, the DOC has a practice that the pretrial detainee may be confined in the DDU.  (Bender Dep. at 50:10-51:6 (Chaudhary Aff. Ex. A).)  Since 2003, there have been several pretrial detainees the DOC has confined to the DDU based on a pre-existing DDU sanction.  (Defendant James Bender's Answers to Plaintiff Albert Ford's Second Set of Interrogatories (hereinafter "Bender Second Interrogatory Answers"), Response No. 1 at pp. 3-5 (Chaudhary Aff. Ex. M).)

### Mr. Ford's Second Period of Pretrial Confinement in the DDU

26. On June 26, 2007, following revocation of Mr. Ford's bail, Sheriff Bellotti's office again wrote to the Norfolk County District Attorney's Office seeking approval for Mr. Ford to be held by the DOC pursuant to Section 52A.  (Defendant Michael Bellotti's Answer to the Plaintiff's Amended Compl., April 28, 2009, Docket No. 78 [hereinafter "Bellotti Answer"], ¶ 21.)

27. At Mr. Bender's direction, Peter St. Amand, the Superintendent of MCI-Cedar Junction, had called Michael Maloney of the Norfolk County Sheriff's Office to inform him that Mr. Ford's bail had been revoked and that the DOC would again be willing to accept Mr. Ford back into DOC custody.  (St. Amand Dep. at 150:16-151:7; 152:17-153:24 (Chaudhary Aff. Ex. G).)

28. The Office of the District Attorney for Norfolk County granted Defendant Bellotti's request on June 26, 2007.  (Bellotti Answer ¶ 21.)

29. Mr. Ford was taken back into DOC custody on June 26, 2007 and returned to MCI-Cedar Junction, where he was placed back in the DDU without a hearing.  (*See* Bender

Dep. at 139:10-140:18 (Chaudhary Aff. Ex. _A); Ford Dep. at 96:9-98:6 (Chaudhary Aff. Ex. C); DOC Answer ¶¶ 22-24.)

30.     Mr. Bender again made the decision to return Mr. Ford to the DDU as a pretrial detainee.  (Bender Dep. at 139:10-15 (Chaudhary Aff. Ex. A).)  As in January, by confining Mr. Ford to the DDU, Mr. Bender intended to continue to punish Mr. Ford for the conduct for which he was being held awaiting trial.  (Bender Dep. at 139:16-140:23, 142:2-143: 3 (Chaudhary Aff. Ex. A).)  Once again, Mr. Ford's status as a pretrial detainee did not impact Mr. Bender's decision on where to confine Mr. Ford in June 2007.  (Bender Dep. at 143:4-16 (Chaudhary Aff. Ex. A).)  Mr. Bender also undertook no inquiry to determine whether, given the restrictive conditions in the DDU, Mr. Ford would be able to prepare adequately for his criminal case.  (Bender Dep. at 144:8-21 (Chaudhary Aff. Ex. A).)  Nor does Mr. Bender recall speaking about Mr. Ford's placement with either the Superintendent of MCI-Cedar Junction or the head of the DDU, even though both of those individuals would have had more information about Mr. Ford than Mr. Bender possessed.  (Bender Dep. at 144:22-145:19 (Chaudhary Aff. Ex. A).)

## 2008 Placement in the DDU

31.     On April 30, 2008, Mr. Ford pled guilty to the charges pending against him in Norfolk County Superior Court and was sentenced to four to five years incarceration.  (Chaudhary Aff. Ex. N  (Norfolk Superior Court Mittimus to MCI-Cedar Junction).)

32.     Mr. Ford was given credit for serving 375 days awaiting trial as a pretrial detainee.  (Chaudhary Aff. Ex. N  (Norfolk Superior Court Mittimus to Cedar Junction MCI).)

33.     After pleading guilty, Mr. Ford was returned directly to the DDU at MCI-Cedar Junction.  (DOC Answer ¶ 28; Ford Dep. at 102:10-103:7 (Chaudhary Aff. Ex. C).)  Mr. Ford did not receive a hearing before being placed back in the DDU.  (*See* Bender Dep. at 172:2-173:4

(Chaudhary Aff. Ex. A).)

34.     Mr. Bender again decided that Mr. Ford should be confined in MCI-Cedar Junction and that he would also be returned to the DDU to continue his 10-year DDU sanction. (*See* Bender Dep. at 172:2-18 (Chaudhary Aff. Ex. A).)  Mr. Bender has no recollection of discussing or communicating with anyone regarding the decision to resume Mr. Ford's DDU sanction.  (Bender Dep. at 172:19-24 (Chaudhary Aff. Ex. A).)

35.     Since at least 2003, the DOC has had a practice of continuing to impose a DDU sanction issued during an inmate's completed criminal sentence during an inmate's new criminal sentence if at the conclusion of the former sentence the inmate still had time remaining on his DDU sanction.  (Bender Dep. at 64:16-65:8; 65:22-66:20 (Chaudhary Aff. Ex. A); *see also* Silva Dep. at 37:2-38:1) (Chaudhary Aff. Ex. F).)

36.     Mr. Bender is responsible for making the determination about whether an inmate returning to DOC custody should be confined to the DDU.  (Bender Dep. at 136:17-137:4 (Chaudhary Aff. Ex. A).)

37.     Among the factors that Mr. Bender considers in determining whether an inmate will be required to continue a DDU sanction during a new criminal sentence are the seriousness

of the underlying DDU offense, the length of time remaining on the DDU sanction, and the inmate's behavior during the DDU sanction. (Bender Dep. at 65:9-21 (Chaudhary Aff. Ex. A).)

        ALBERT FORD
        By his attorneys,

        /s/ Lisa J. Pirozzolo
        Lisa J. Pirozzolo, BBO # 561922
        Timothy D. Syrett, BBO # 663676
        Dimple Chaudhary, BBO # 674845
        Wilmer Cutler Pickering Hale and Dorr LLP
        60 State Street
        Boston, Massachusetts 02109
        Tel: (617) 526-6000
        Fax: (617) 526-5000

Dated:    September 14, 2008

US1DOCS 7233798v6

**CERTIFICATE OF SERVICE**

I, Dimple Chaudhary, hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic court filing (ECF) system, this 14th day of September, 2009.

    /s/ Dimple Chaudhary
    Dimple Chaudhary BBO # 674845

US1DOCS 7233798v6