United STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALBERT FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 07-11457-JGD |
| HAROLD CLARKE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER
## ON PARTIES' MOTIONS TO STRIKE

September 30, 2010

DEIN, U.S.M.J.

The plaintiff, Albert Ford ("Ford"), has brought this action challenging his

confinement in the Departmental Disciplinary Unit ("DDU") at MCI-Cedar Junction.

Ford claims, inter alia, that his confinement in the DDU, first as a pretrial detainee and

later as a convicted prisoner, deprived him of his federal and state constitutional rights.

The matter is presently before the court on the DOC defendants'[1] motion for summary

judgment and on Ford's motion for partial summary judgment (Docket Nos. 90 and 94).

In connection with those motions, each of the parties has filed a motion to strike certain

documents contained in the summary judgment record.  (Docket Nos. 103 and 112).

---

[1]  The DOC defendants include the DOC, the Commissioner of Correction, Harold Clarke, the Deputy Commissioner of Correction, James Bender, the Superintendent of MCI-Cedar Junction, Peter St. Amand, and the Assistant Deputy Commissioner of Correction, Kenneth Nelson.

After consideration of the parties' arguments, and for the reasons detailed below, this court rules as follows:

1.  Ford's motion to strike Exhibits F, L, M, N and Q submitted by the DOC defendants in support of their motion for summary judgment (Docket No. 103) is ALLOWED IN PART and DENIED IN PART. Exhibit Q shall be stricken, but the motion is otherwise denied.

2.  The DOC defendants' motion to strike Exhibits A and G submitted by Ford in connection with his opposition to the DOC defendants' motion for summary judgment (Docket No. 112) is ALLOWED IN PART and DENIED IN PART.  Specifically, the motion is allowed with respect to Exhibit G but denied with respect to Exhibit A.

**A.**      **Ford's Motion to Strike**

By his motion, Ford has moved to strike Exhibits F, L, M, N and Q submitted by the DOC defendants in support of their motion for summary judgment and attached to the Affidavit of Julie E. Daniele, Esq. (Docket No. 93).  Exhibit F is a DDU Hearing Packet, Exhibits L, M and N consist of Disciplinary Reports and Hearing Summaries, and Exhibit Q is the Commonwealth's Statement of the Case, which was filed by the Norfolk County District Attorney's office in a criminal matter against Ford.  Each of these documents contains statements by DOC employees describing Ford's past conduct.  Ford argues that "any statements in these documents about Mr. Ford's past conduct are hearsay that is inadmissible at trial to establish the truth of the reported facts."  (Pl. Mem. (Docket No. 104) at 2) (quotation and citation omitted).  He further argues that the documents do not fall within any of the hearsay exceptions set forth in Fed. R. Evid. 803.

-2-

The plaintiff's motion to strike is denied with respect to Exhibits F, L, M and N. According to the DOC defendants, they are not relying on the documents to establish the truth of the statements contained therein regarding Ford's past conduct. (Def. Opp. Mem. (Docket No. 115) at 2). Rather, the defendants are relying on these exhibits to show that the plaintiff received disciplinary reports, was provided with the opportunity to address the alleged charges against him at a hearing, and was sentenced to the DDU as a result of the alleged conduct. (Id.). Exhibits F, L, M and N are admissible for the purpose articulated by the defendants and will not be stricken.

In contrast, the DOC defendants are seeking to rely on Exhibit Q to establish that Ford's bail was revoked because he attempted to send heroin into MCI-Cedar Junction. (See Docket No. 92 at 24). Therefore, they are relying on Exhibit Q in order to establish the truth of the matters asserted in the document.[2]

The DOC defendants argue that Exhibit Q is nevertheless admissible as a public record. This court disagrees. The public record exception to the hearsay rule "makes admissible over hearsay objections: 'reports . . . of public offices or agencies, setting

---

[2]  The DOC defendants argue that they are merely relying on Exhibit Q in order to establish Deputy Commissioner Bender's state of mind. Specifically, they argue that the document "is merely used to support Deputy Commissioner Bender's decision to return Ford to the DDU to complete his DDU sanction upon being re-committed as a pretrial detainee based upon Ford's serious violation of his bail conditions." (Def. Opp. Mem. at 3). However, this argument is inconsistent with the DOC defendants' memorandum in support of their motion for summary judgment, in which they cite Exhibit Q in support of their assertion that Ford's bail was revoked, and the plaintiff was returned to DOC custody, "as a result of attempting to send heroin into MCI-Cedar Junction[.]" (Docket No. 92 at 24). Thus, the defendants are relying on the exhibit to establish the truth of the matters described therein.

forth . . . in civil actions and proceedings . . . factual findings resulting from an investiga-

tion made pursuant to authority granted by law, unless the sources of information or other

circumstances indicate lack of trustworthiness.'" Bates v. Kender, 537 F. Supp. 2d 281,

282 (D. Mass. 2008) (quoting Fed. R. Evid. 803(8)(C)).  Exhibit Q does not contain

factual findings from an investigation, but rather describes information provided by third

parties regarding the plaintiff's alleged conduct.  Decisions in the First Circuit squarely

hold "that hearsay statements by third persons . . . are not admissible under [the public

record] exception merely because they appear within public records." United States v.

Mackey, 117 F.3d 24, 28 (1st Cir. 1997).  See also Bates, 537 F. Supp. 2d at 282 (witness

statements in public record inadmissible as double hearsay).  Therefore, Exhibit Q does

not fall within this exception to the hearsay rule.

     The defendants also argue that Ford later pled guilty to charges resulting from his

attempt to send heroin into MCI-Cedar Junction, and has therefore admitted to the facts

contained in Exhibit Q.  (Def. Opp. Mem. at 3).  This argument is insufficient to render

the exhibit admissible.  As an initial matter, in their opposition to the motion to strike, the

DOC defendants have provided no evidentiary support for their argument that Ford pled

guilty to the charges arising from the alleged incident described in Exhibit Q.  (See id.).

Nor have they presented any evidence to suggest that by pleading guilty, Ford adopted the

facts described in the document.  Furthermore, even assuming the defendants' factual

arguments are accurate, they have not cited any case law showing that hearsay statements

are admissible under such circumstances.  Therefore, Exhibit Q shall be stricken.

**B.**    <u>**The DOC Defendants' Motion to Strike**</u>

The DOC defendants have moved to strike Exhibits A and G submitted by Ford in connection with his opposition to the DOC defendants' motion for summary judgment and attached to the Affidavit of Timothy D. Syrett (Docket No. 109). Exhibit A contains the Expert Report of Dr. Stuart Grassian, the plaintiff's expert, and Exhibit G consists of a magazine article from <u>The New Yorker</u> entitled "Hellhole." The defendants contend that these exhibits should be stricken because they are irrelevant and contain inadmissible hearsay. For the reasons that follow, the motion is denied with respect to Exhibit A but allowed with respect to Exhibit G.

<u>**Relevance**</u>

Ford has shown that Exhibit A may be relevant to his claim that his confinement in the DDU violated his Fourteenth Amendment right to substantive due process and the court will use the report just for background, informational purposes. In evaluating whether the conditions of confinement have deprived a pretrial detainee of liberty without due process of law, the court must determine whether the "particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of the word." <u>Bell v. Wolfish</u>, 441 U.S. 520, 538, 99 S. Ct. 1861, 1873, 60 L. Ed. 2d 447 (1979). Accordingly,

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose

> to which [the restriction] may rationally be connected is assignable
> for it, and whether it appears excessive in relation to the alternative
> purpose assigned [to it]."

Id. at 538, 99 S. Ct. at 1873-74 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144,

168-69, 83 S. Ct. 554, 567-68, 9 L. Ed. 2d 644 (1963)) (internal citation and footnote

omitted).

In his summary judgment papers, Ford argues that his substantive due process

rights were violated both because the defendants intended to punish him by placing him

in the DDU as a pretrial detainee and because his detention there was excessive and not

rationally related to a legitimate governmental purpose.  (See Docket No. 108 at 13-16,

18-25).  While this court has found that there was an express intent to punish Ford,

Exhibit A would be relevant to the second argument.  In his expert report, Dr. Grassian

expresses opinions regarding the psychiatric effects of confinement in solitary confine-

ment generally and in the DDU in particular.  Expert opinion regarding the potential

impact of DDU confinement on the detainee's mental health may be relevant to the

question whether the decision to house Ford in the DDU was reasonably related to a

legitimate purpose or was excessive, arbitrary or purposeless.  Therefore, this court will

not strike Exhibit A on the grounds that it is irrelevant.[3]

---

[3]  The DOC defendants argue that the case of Torres v. Commissioner of Correction, 427
Mass. 611, 695 N.E.2d 200 (1998), "precludes relitigation of the issue of conditions of confine-
ment in the DDU; thus, the purpose of plaintiff's submission of Grassien's affidavit and/or
testimony would be unnecessary in this case and inadmissible at trial."  (Def. Mem. (Docket No.
113) at 2 n.1).  Torres involved a challenge to conditions of confinement in the DDU by present
and former prisoners who claimed that such conditions violated their Eighth Amendment right to

With respect to Exhibit G, the plaintiff argues that it is relevant to the reasonable-ness of Ford's pretrial detention in the DDU because it shows that "there is a serious ongoing discussion about whether solitary confinement of *convicted* inmates amounts to torture" and therefore raises "a material question of fact whether it was reasonable to subject a *pretrial* detainee to such confinement." (Pl. Opp. Mem. (Docket No. 117) at 4). This court disagrees. The fact that there is debate about the severity of solitary confine-ment and its impact on inmates' health is not relevant to whether the circumstances of Ford's confinement in this case were excessive. Therefore, Exhibit G will be stricken.

### Hearsay

The DOC defendants have also challenged the admissibility of the exhibits on the grounds that they contain inadmissible hearsay. This court declines to strike Dr.

---

remain free from cruel and unusual punishment, and that the administrative disciplinary process governing DDU confinement violated their procedural due process rights. In contrast to this action, Torres did not involve pretrial detainees and did not address claims for violation of the plaintiffs' substantive due process rights. Thus, to the extent the defendants are arguing that claim preclusion bars the plaintiff's substantive due process claims in this case, their argument is unpersuasive. See Kobrin v. Bd. of Registration in Med., 444 Mass. 837, 843, 832 N.E.2d 628, 634 (2005) (claim preclusion requires "identity or privity of the parties to the present and prior actions" and "identity of the cause of action" in addition to a "prior final judgment on the merits") (quotations and citations omitted). To the extent they are suggesting that the plaintiff should be precluded from introducing evidence regarding the circumstances of his confinement in the DDU because conditions in that unit were already determined in Torres, their argument is also unpersuasive. "[I]ssue preclusion prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." Id. (quotations and citation omitted). Torres was decided in 1998, and Ford's claims arise from his confinement beginning in 2007. (See generally Am. Compl. (Docket No. 52)). There is nothing to suggest that Ford was in privity with the plaintiffs in that action or that he was subjected to the same conditions in the DDU that the plaintiffs in Torres were subjected to approximately nine years earlier. Therefore, issue preclusion is inapplicable to the present case.

Grassian's report on this basis.[4]   The DOC defendants have not identified which sections of the report they are challenging as hearsay.   To the extent they are objecting to Dr. Grassian's reliance on hearsay in forming his opinions, they have not attempted to show why this would be improper.   Under Fed. R. Civ. P. 703, expert witnesses are specifically permitted "to rely on otherwise inadmissible hearsay of a type 'reasonably relied' on by experts in the field."   United States v. Corey, 207 F.3d 84, 91 (1st Cir. 2000).   The defendants do not argue, and have made no effort to show, that Dr. Grassian relied on hearsay evidence that does not fall within the parameters of Rule 703.

To the extent the DOC defendants are objecting to a law review article that was authored by Dr. Grassian and is attached to his report, they have not shown that the article should be stricken.   As described in Dr. Grassian's report, the article "sets forth [Dr. Grassian's] opinions regarding the effects of solitary confinement" and "describes the extensive body of literature, including clinical and experimental literature, regarding the effects of decreased environmental and social stimulation, as well as specifically, observations concerning the effects of segregated confinement on prisoners."   (Syrett Aff., Ex. A ¶ 4).   According to Dr. Grassian, he "may present these opinions in this case, if asked."   (Id.).   Therefore, Dr. Grassian's purpose in attaching the law review article was to disclose the extent of his potential testimony in this case, as well as the basis for his opinions.   His inclusion of the article is both appropriate and mandated by the

_____

[4]   Having found that Exhibit G should be stricken as irrelevant, this court declines to address whether it should also be stricken on the basis of hearsay.

applicable rules.  <u>See</u> Fed. R. Civ. P. 26(a)(2)(B) (requiring disclosure of expert report containing, <u>inter</u> <u>alia</u>, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them").  Therefore, this court declines to strike it on hearsay grounds.

## <u>ORDER</u>

For all the reasons described herein, it is hereby ORDERED as follows:

1.  Ford's motion to strike Exhibits F, L, M, N and Q submitted by the DOC defendants in support of their motion for summary judgment (Docket No. 103) is ALLOWED IN PART and DENIED IN PART.  Exhibit Q shall be stricken, but the motion is otherwise denied.

2.  The DOC defendants' motion to strike Exhibits A and G submitted by Ford in connection with his opposition to the DOC defendants' motion for summary judgment (Docket No. 112) is ALLOWED IN PART and DENIED IN PART.  Specifically, the motion is allowed with respect to Exhibit G but denied with respect to Exhibit A.

     / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge