UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALBERT FORD, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | )    CIVIL ACTION |
| | )    NO. 07-11457-JGD |
| JAMES BENDER, et al., | ) |
| | ) |
|     Defendants. | ) |

# MEMORANDUM OF DECISION AND ORDER
# ON PLAINTIFF'S MOTION FOR COURT OVERSIGHT

March 31, 2011

DEIN, U.S.M.J.

This matter is before the court on "Plaintiff Albert Ford's Motion for Court Oversight of Defendants' Compliance with Prior Orders to Provide Due Process" (Docket No. 144). Therein, plaintiff Albert Ford ("Ford") contends that the Department of Correction defendants (the "DOC defendants") concocted and pursued false disciplinary charges against him in order to avoid compliance with this court's order to provide him with procedural protections relating to his placement at MCI-Cedar Junction. As relief, Ford requests that "the Court provide oversight of any action by the DOC defendants regarding Mr. Ford's placement" at MCI-Cedar Junction, and allow the plaintiff to take discovery relating to recent disciplinary proceedings against him, including "the process provided to Mr. Ford, the preparation of [a] November 17, 2010 Disciplinary Report, and the destruction of relevant videotape evidence by the DOC defendants." (See Docket No.

148 at 5).

For all the reasons set forth below, Ford's motion for court oversight is ALLOWED IN PART and DENIED IN PART. The plaintiff may take the deposition of Corrections Officer Andrew F. Lee regarding the circumstances surrounding his preparation and submission of disciplinary reports against Ford in November 2010. The plaintiff also may take the deposition of one DOC representative concerning the DOC's failure to preserve relevant videotape evidence. In addition, Ford may serve the DOC defendants with five interrogatories and one document request seeking no more than five categories of documents in order to obtain evidence regarding the basis for the DOC's decision to pursue disciplinary charges against him. However, the motion is otherwise denied.

## BACKGROUND

In this action, Ford is challenging his confinement in the Departmental Disciplinary Unit ("DDU") at MCI-Cedar Junction while a pretrial detainee, and later, as a convicted felon serving his sentence. On September 30, 2010, this court issued a Memorandum of Decision and Order on Parties' Motions for Summary Judgment (Docket No. 130) in which it found, in relevant part, that Ford had been deprived of his constitutional right to procedural due process in connection with his placement in the DDU. Subsequently, Ford moved for an order directing the Deputy Commissioner of Correction, defendant James Bender, to release the plaintiff from the DDU, and on November 8, 2010, this court issued an order in which it ruled, inter alia, that the DOC

defendants were to notify the plaintiff by November 16, 2010 as to whether they intended to confine Ford in general population or whether they were seeking to continue his confinement in a segregated housing unit such as the DDU. (See Docket Nos. 132 and 138). This court further ruled that if the DOC defendants were seeking to confine Ford in a segregated housing unit, they were to conduct a hearing concerning Ford's placement by November 24, 2010. (Docket No. 138).

On November 16, 2010, the day the DOC defendants were to notify the plaintiff of their decision, the DOC defendants instead filed an emergency motion for a thirty day extension of time to conduct a hearing regarding Ford's placement. (Docket No. 142). Therein, the DOC defendants asserted that Ford had engaged in "a pattern of threatening behavior," consisting of "a number of serious threats against [prison] staff[.]" (Id. at 1). In particular, they claimed that Ford had boasted of past hostage taking and had threatened to repeat that behavior again. (Id. at 1-2). The DOC defendants argued that an extension was necessary so that DOC officials could determine whether Ford's alleged behavior warranted a DDU referral and a disciplinary hearing on the new charges. (Id. at 2). This court allowed the emergency motion, and directed the DOC defendants to file a status report on November 24, 2010. (See Electronic Order dated 11/17/2010).

On November 24, 2010, the DOC defendants filed a status report in which they informed the court that Ford had been served with a DDU referred disciplinary report, and that a hearing on the new charges would be completed by December 16, 2010. (Docket No. 143). On November 29, 2010, before any such hearing took place, the

plaintiff filed the instant motion for court oversight. Therein, Ford strenuously denies that the alleged behavior took place. He also argues, based on the DOC's own documentation regarding the incidents in question, that the disciplinary charges against him are nothing more than a sham representing the DOC defendants' "efforts to circumvent the Court's prior orders with unsubstantiated allegations against Mr. Ford." (Pl. Mot. at 1). He contends that "judicial oversight is needed in light of the DOC defendants' . . . continued failure to provide Mr. Ford with timely procedural due process[.]" (Id.).

On December 13, 2010, while Ford's motion remained pending, an administrative hearing on the disciplinary charges took place before a Special Hearing Officer. (See Docket No. 150 at Ex. A). Ford's counsel was present at the hearing and was allowed to participate in the proceedings. (See id.). On December 15, 2010, the Special Hearing Officer issued a decision in which he found Ford guilty of having "a plan to take a hostage which he would later commit if and when he is released from the DDU." (Id. at Ex. B).[1] The Special Hearing Officer also recommended that Ford serve ten months in the DDU. (Id.). By his instant motion, Ford contends that the record of the disciplinary proceedings reflects a "highly irregular process" and was inadequate to support the Special Hearing Officer's decision. (See Docket No. 148 at 5). In support of his position, Ford has filed copies of the disciplinary reports giving rise to the disciplinary

---

[1] The Special Hearing Officer's decision can be found at page 8 of the Disciplinary Hearing Summary attached to Exhibit B of Docket No. 150.

4

charges against him, a certified transcript of the December 13, 2010 disciplinary hearing, and other evidence from the administrative proceedings that resulted in his recent DDU sentence.

Ford subsequently filed an administrative appeal of the Special Hearing Officer's decision. (See Docket No. 150 at Ex. B). Therein, Ford argued that reversal of the Special Hearing Officer's decision was warranted because (1) the Hearing Officer's conclusion that Ford had a plan to take a hostage was unsupported by the undisputed evidence and was erroneous as a matter of law; (2) the DOC failed to preserve exculpatory video evidence; (3) the Disciplinary Report at issue was not filed within the time required by the applicable DOC regulations; and (4) "the late-made charges against Mr. Ford are merely a pretext for continuing to hold him in the [DDU] after a federal court found his current confinement there unlawful." (Id. at Ex. B p. 1).

The record before this court does not reflect the outcome of Ford's administrative appeal. Nevertheless, Ford has confirmed that he is continuing to pursue his motion for court oversight, and that he also wishes to obtain discovery regarding the disciplinary process that was provided to him. (See Docket No. 148). For the reasons that follow, Ford's request for court oversight is denied. However, the plaintiff may engage in some limited discovery in order to substantiate, if possible, his allegations that the DOC's decision to initiate and pursue the recent disciplinary charges against him was motivated by the DOC defendants' desire to avoid this court's orders rather than any serious misconduct by the plaintiff.

**DISCUSSION**

As detailed above, it is undisputed that Ford was provided with notice and a hearing regarding the recent disciplinary charges against him. Nevertheless, Ford contends that the circumstances surrounding the proceedings were sufficiently irregular to warrant this court's continuing oversight of the DOC defendants' actions regarding Ford's placement within the prison facility. This court disagrees. "Inmates challenging alleged improprieties in prison disciplinary proceedings under State law must proceed by way of an action in the nature of certiorari." Pidge v. Superintendent, Mass. Corr. Inst., Cedar Junction, 32 Mass. App. Ct. 14, 17, 584 N.E. 2d 1145, 1148 (1992). See also Murphy v. Superintendent, Mass. Corr. Inst., Cedar Junction, 396 Mass. 830, 833, 489 N.E. 2d 661, 663 (1986) (treating inmates' claim that evidence did not support disciplinary board conclusion as an action in the nature of certiorari pursuant to Mass. Gen. Laws ch. 249, § 4). As set forth in Mass. Gen. Laws ch. 249, § 4, such actions must be brought in state court. Therefore, to the extent Ford is challenging alleged irregularities in the disciplinary proceedings against him, this is not the appropriate forum in which to pursue such a challenge.

Moreover, the classification or placement of an inmate within a prison facility is a matter of prison administration that lies within the discretion of prison officials. See Montanye v. Haymes, 427 U.S. 236, 242, 96 S. Ct. 2543, 2547, 49 L. Ed. 2d 466 (1976) (prison authorities' decision to place inmate in particular institution not subject to judicial oversight). Courts necessarily play a "very limited role . . . in the administration of

[prison] facilities." Block v. Rutherford, 468 U.S. 576, 584, 104 S. Ct. 3227, 3231-32, 82 L. Ed. 2d 438 (1984). As the Supreme Court has cautioned, "'prison administrators [are to be] accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Id. at 585, 104 S. Ct. at 3232 (quoting Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 1878, 60 L. Ed. 2d 447 (1979)). These principles compel the conclusion that judicial oversight of the DOC defendants' placement decisions would be inappropriate. Therefore, Ford's request for such oversight is denied.

Ford has also requested permission to conduct discovery on the process he received in connection with the disciplinary charges, the Disciplinary Report that triggered the DDU referral, and the alleged destruction of videotape evidence by the DOC defendants. (See Docket No. 148 at 5). "In a civil case, . . . a party is entitled as a general matter to discovery of any information sought if it appears 'reasonably calculated to lead to the discovery of admissible evidence.'" Degen v. United States, 517 U.S. 820, 825-26, 116 S. Ct. 1777, 1782, 135 L. Ed. 2d 102 (1996) (quoting Fed. R. Civ. P. 26(b)(1)). This court finds that the discovery which Ford has requested is relevant only to the extent that it seeks information regarding the DOC's motivation for initiating and pursuing the recent disciplinary charges against the plaintiff.

Ford alleges that the DOC defendants have fabricated evidence and pursued baseless disciplinary charges against him for the purpose of avoiding compliance with this court's order to provide him with procedural due process. Essentially, he is accusing

7

the DOC defendants of civil contempt. See Rolland v. Romney, 273 F. Supp. 2d 140, 142 (D. Mass. 2003) (describing contempt as noncompliance with a clear and unambiguous court order). "[T]he court not only has the right, but also the obligation to prevent violations of its orders." Id. Thus, Ford's allegation that the latest disciplinary charges reflect nothing more than an illegitimate effort to avoid the process ordered by this court is relevant to the present action, and Ford should have an opportunity to take some limited discovery relating to that issue.

As shown in the materials submitted by Ford in support of his present motion, the disciplinary charges at issue arose as the result of reports prepared and submitted by Corrections Officer Andrew F. Lee. Accordingly, this court will allow the plaintiff to depose Officer Lee regarding the circumstances surrounding his preparation and submission of disciplinary reports against Ford in November 2010. This court also will allow Ford to take one deposition aimed at exploring the reasons for the DOC's failure to preserve potentially exculpatory videotape evidence. In addition, Ford may serve a limited number of written discovery requests on the DOC defendants for the purpose of obtaining evidence regarding the DOC's motivation for pursuing the disciplinary charges against him. However, Ford's request for discovery regarding the process he received in connection with the disciplinary charges is denied. While that issue may be relevant to any challenge that Ford may seek to bring in state court by way of an action in the nature of certiorari, there is little likelihood that discovery regarding the disciplinary process would reveal any motivation for the decision to initiate the disciplinary charges.

This court is not convinced that additional discovery would be appropriate at this juncture in the litigation.  While Ford has raised a legitimate challenge to the recent disciplinary proceedings, the issue that is relevant to this action is a narrow one.  Ford has not shown that further discovery at this time would be likely to lead to the discovery of evidence that would be admissible in this matter.

## ORDER

For all the reasons detailed herein, "Plaintiff Albert Ford's Motion for Court Oversight of Defendants' Compliance with Prior Orders to Provide Due Process" (Docket No. 144) is ALLOWED IN PART and DENIED IN PART.  The plaintiff may take the deposition of Corrections Officer Andrew F. Lee regarding the circumstances surrounding his preparation and submission of disciplinary reports against Ford in November 2010.  The plaintiff also may take the deposition of one DOC representative concerning the DOC's failure to preserve relevant videotape evidence.  In addition, Ford may serve the DOC defendants with five interrogatories and one document request seeking no more than five categories of documents in order to obtain evidence regarding the basis for the DOC's decision to pursue disciplinary charges against him.  However, the motion is otherwise denied.

    / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge