**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALBERT FORD,<br><br>Plaintiff,<br><br>v.<br><br>JAMES BENDER, Deputy Commissioner of Correction; PETER ST. AMAND, Superintendent of MCI-Cedar Junction,<br><br>Defendants. | Civil Action No. 07-11457-JGD |

**JOINT PRETRIAL MEMORANDUM**

Pursuant to Local Rule 16.5(C), and the Court's November 16, 2010 Order, Plaintiff Albert Ford and Defendants James Bender and Peter St. Amand (the "DOC Defendants" and, collectively with Mr. Ford, the "Parties") hereby submit their Joint Pretrial Memorandum.

## I. THE ISSUES FOR TRIAL

Consistent with the Court's September 30, 2010 Memorandum of Decision and Order on Parties' Motions for Summary Judgment (Docket No. 130) (the "Summary Judgment Decision") and November 10, 2010 Order on Summary Judgment (Docket No. 140), Mr. Ford asserts that the issues remaining for trial are determination of relief on the following claims:[1]

[1] Mr. Ford is not pursuing Counts VII and VIII, his federal and state equal protection claims.

| Claim | Summary Judgment Decision | To be Adjudicated |
|---|---|---|
| Count One: federal substantive due process | James Bender and Peter St. Amand liable in their individual and official capacities | Damages and injunctive relief |
| Count Two: substantive due process under the Massachusetts Declaration of Rights | James Bender and Peter St. Amand liable in their individual and official capacities | Damages and injunctive relief |
| Count Three: federal procedural due process | James Bender liable in his individual and official capacities for pre-trial DDU detention<br><br>James Bender liable in his official capacity for post-conviction DDU detention | Damages and injunctive relief for pre-trial DDU detention.<br><br>Injunctive relief for post-conviction DDU detention |
| Count Four: procedural due process under the Massachusetts Declaration of Rights | James Bender liable in his individual and official capacities for pre-trial DDU detention<br><br>James Bender liable in his official capacity for post-conviction DDU detention | Damages and injunctive relief for pre-trial DDU detention.<br><br>Injunctive relief for post-conviction DDU detention |

Mr. Ford seeks a jury award of compensatory and/or nominal damages at trial for Counts One to Four. Mr. Ford will also seek injunctive relief from the Court as set out in his Trial Brief.

The DOC Defendants assert that this Court has found defendants James Bender and Peter St. Amand liable in both their official and individual capacities for a violation of plaintiff Ford's state and federal substantive due process rights as a pretrial detainee. In addition, the Court has found defendant Bender liable in his official and individual capacities for a violation of plaintiff Ford's state and federal procedural due process rights as a pretrial detainee. Defendants assert,



US1DOCS 7965736v5

however, that the only issue remaining in this case is monetary damages for the alleged violations against defendants Bender and St. Amand in their individual capacities for plaintiff Ford's pretrial detention[2]. This Court has granted defendants qualified immunity for all post-conviction detention violations. Moreover, defendants assert that plaintiff cannot obtain any further injunctive relief in this action beyond the declaratory relief provided by the Court in it's September 30, 2010 Memorandum of Decision and Order on Parties' Motions for Summary Judgment.

## II. SUMMARY OF THE EVIDENCE WITH RESPECT TO DAMAGES

### A. Albert Ford[3]

Mr. Ford will present evidence that he has suffered damages as a result of his wrongful confinement in the DDU as a pretrial detainee from January 6, 2007 to March 2, 2007 and from June 26, 2007 to April 30, 2008 and by the failure to afford him procedural due process in confining him to the DDU as a pretrial detainee. Mr. Ford will present evidence that his DDU confinement exacerbated his diabetic condition, deprived him of privileges and opportunities that would have been available to him in general population, and caused him mental suffering. Mr. Ford will also present evidence that his belief that he was being unlawfully confined in the DDU as a pretrial detainee compromised his ability to withstand the harsh conditions of confinement in the DDU. Mr. Ford will also testify and present evidence, including through the designated testimony of the DOC Defendants and DDU administrator Dale Bissonnette, about the

[2] By making these assertions, the DOC Defendants do not waive any post-judgment remedies available to them, including but not limited to any right to appeal this Court's September 30, 2010 decision, qualified immunity and/or any future jury verdict or relief obtained by Ford.

[3] Mr. Ford separately presents in his Trial Brief the proposed findings of fact and requested rulings of law with respect to his claims for injunctive relief.

deprivations that he suffered as a pretrial detainee in the DDU compared to inmates in the general population.

In addition, Mr. Ford will present the expert testimony of Dr. Stuart Grassian. Dr. Grassian will testify that the sensory deprivation of segregated confinement causes mental pain and suffering. He will also testify that the DDU imposes particularly harsh and isolating conditions of confinement. In addition, Dr. Grassian will testify that Mr. Ford's confinement in the DDU as a pretrial detainee caused him significant harm, in part because he was less able to cope with those conditions of confinement because he knew he was subjected to them unlawfully. Further, Dr. Grassian will testify that to address the harm that he suffered, Mr. Ford will require ongoing mental and physical care upon his release.

**B. The DOC Defendants**

Defendants James Bender and Peter St. Amand assert that plaintiff Ford has not suffered any compensatory harm as a result of his housing in the DDU as a pretrial detainee from January 2007 through March 2007 and June 2007 through May 2008. Accordingly, he is not entitled to any damages for the substantive and/or procedural due process violations found by the Court in its September 30, 2010 Memorandum of Decision and Order on Parties' Motions for Summary Judgment.

Defendants will testify that the segregated conditions under which Ford was housed during the time that he was a pretrial detainee were appropriate based upon his institutional adjustment and history. Accordingly, the conditions of Ford's confinement during this time in the DDU were not measurably different than they would have been if he was housed in another appropriate housing unit. Moreover, defendants' expert, Dr. Bernard Katz, will testify that Ford does not suffer from any mental illness at this time and that his housing in the DDU as a pretrial detainee did not cause any mental illness or mental pain and suffering. Similarly, Dr. Katz will

testify that Ford's housing in the DDU during his time as a pretrial detainee caused no different mental stress, pain or suffering than any other time that Ford was housed in the DDU.

## III. STATEMENT OF ESTABLISHED FACTS

The facts in this matter as to liability are set forth in the Court's Summary Judgment Decision.[4] Many of these facts are also relevant to damages and injunctive relief.

Set forth below are "Joint Statements of Established Facts" regarding factual areas where the parties are in agreement along with additional facts not agreed upon by the Defendants and Mr. Ford.

### A. The DDU

#### 1. Joint Statement of Established Facts regarding the DDU

a) MCI-Cedar Junction is a maximum security facility located in Walpole, Massachusetts.

b) The Departmental Disciplinary Unit ("DDU") is a restricted area designated by the Commissioner of Correction.

c) An inmate may be confined to the DDU after a Special Hearing Officer finds the inmate guilty of a disciplinary infraction warranting DDU placement and any appeal to the Deputy Commissioner has been resolved.

#### 2. Mr. Ford's Statement of Established Facts regarding the DDU

a) Inmates can be sentenced to the DDU only after a disciplinary officer finds that such a sentence may be warranted and forwards a copy of the disciplinary report to a Special Hearing Officer, the prisoner is notified of the possibility of a DDU sentence, and a hearing is held.

#### 3. DOC Defendants' Statement of Established Facts regarding the DDU

a) Inmates incarcerated in the DDU are placed there only after they are found guilty of committing a category one disciplinary offense

[4] Defendants do not concede that all of the facts found in the Court's Summary Judgment decision are accurate or properly determined; however, for purposes of the trial on damages, defendants agree to utilizing some of the facts found by this Court for ease in determining the issue of damages.

(the most serious offense). Once guilt is established by a Special Hearing Officer, he/she may recommend that the inmate be placed in the DDU. As with all disciplinary offenses, inmates must receive a copy of the disciplinary report, a notice of the hearing, and a request for representation and/or evidence form prior to a hearing on a disciplinary infraction. (103 CMR 430.11). The Director of Discipline must review all DDU referred disciplinary reports and determine whether a DDU hearing shall be held. (103 CMR 430.08). If the Special Hearing Officer finds that the inmate has committed the charged offense by a preponderance of the evidence, he/she may recommend that the inmate be confined in the DDU for any time period up to ten (10) years. (103 CMR 430.16 and 430.25). Inmates may appeal the finding and or sanctions to the Deputy Commissioner. (103 CMR 430.18).

## B. The Defendants

### 1. Joint Statement of Established Facts Regarding the Defendants

a) At all times relevant to plaintiff Ford's Amended Complaint, James Bender was the Deputy Commissioner of the Prison Division of the DOC or the Acting Commissioner of the DOC. As Deputy Commissioner, his responsibilities included, but were not limited to, overseeing the operations at the DOC's correctional facilities, including those facilities that house convicted inmates, civilly committed inmates and pretrial detainees.

b) Peter St. Amand was the Superintendent at MCI-Cedar Junction from March 15, 2007 through November 27, 2009. In that capacity, Mr. St. Amand was responsible for overseeing the operation of MCI-Cedar Junction, including overseeing operations in the DDU. Moreover, he was responsible for the care and custody of all inmates at the facility.

## C. Mr. Ford's Initial Period of Pretrial Confinement in the DDU

### 1. Joint Statement of Established Facts

a) Mr. Ford was confined in the DDU as a pretrial detainee from January 6, 2007 until March 2, 2007.

b) Mr. Ford did not receive a new hearing prior to his confinement in the DDU as a pretrial detainee.

c) Mr. Bender made the decision to confine Mr. Ford in the DDU as a pretrial detainee.

**2. The DOC Defendants' Statement of Established Facts Regarding Mr. Ford's Initial Period of Pretrial Confinement in the DDU**

a) On January 17, 2003, while Mr. Ford was serving a criminal sentence at MCI-Cedar Junction, he received a sanction of 10 years confinement in the DDU.

b) Mr. Ford's 2003 sanction was imposed by a Special Hearing Officer following a DOC disciplinary hearing, which Mr. Ford was provided the opportunity to attend but chose not to attend. Mr. Ford was also provided the opportunity to have counsel present, but for whatever reason, chose not to have such counsel present.

c) Subsequently, in 2003 Mr. Ford was indicted in Norfolk County Superior Court for the incident for which he had received the 10-year DDU sanction. Mr. Ford was still serving his original criminal sentence at the time of his indictment.

d) On January 2, 2007, four days prior to the expiration of Mr. Ford's original criminal sentence, the Norfolk County Sheriff's Office requested that the Norfolk County District Attorney's Office approve Mr. Ford's continued confinement in DOC custody pending the resolution of his still outstanding criminal charges in Norfolk Superior Court.

e) The District Attorney's Office granted the request on January 2, 2007, and the DOC accepted Mr. Ford into its custody.

f) Mr. Ford completed his original criminal sentence on January 6, 2007, and his status therefore changed from a convicted prisoner to a pretrial detainee. There were no other changes in Mr. Ford's status. Mr. Ford remained in the DDU serving his DDU sanction.

g) Mr. Ford did not receive another hearing prior to his confinement in the DDU as a pretrial detainee.

h) Mr. Bender made the decision to confine Mr. Ford in the DDU pursuant to his disciplinary sanction even though Mr. Ford was no longer serving a criminal sentence.

**D. Mr. Ford's Second Period of Pretrial Confinement in the DDU**

**1. Joint Statement Established Facts Regarding Mr. Ford's Second Period of Pretrial Confinement in the DDU**

a) Mr. Ford was confined in the DDU as a pretrial detainee from June 26, 2007 until April 30, 2008.

b) Mr. Ford did not receive a new hearing prior to his confinement in the DDU as a pretrial detainee.

c) Mr. Bender made the decision to confine Mr. Ford in the DDU as a pretrial detainee.

d) Mr. Ford spent 375 days in the DDU as a pretrial detainee.

**2. DOC Defendants' Statement of Established Facts Regarding Mr. Ford's Second Period of Pretrial Confinement in the DDU**

a) On June 26, 2007, Mr. Ford's bail was revoked due to new criminal charges of distributing a class A substance into MCI-Cedar Junction through the mail and he was returned to DOC custody to await trial. (*Id*.)

## IV. CONTESTED ISSUES OF FACT

### A. Albert Ford's Issues of Fact

The amount of harm that Mr. Ford suffered as a result of the DOC Defendants' conduct.

### B. The DOC Defendants' Issues of Fact

Defendants agree that the only issue of fact left to be determined is whether the DOC Defendants' conduct during the time period that Ford was a pretrial detainee caused him any compensatory harm.

## V. JURISDICTIONAL QUESTIONS

None. Defendants assert, however, that they are entitled to the protections of the Prison Litigation Reform Act.

## VI. ANY QUESTIONS RAISED BY PENDING MOTIONS

None.

## VII. ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS

As set forth in Mr. Ford's Trial Brief, he is seeking injunctive relief in this matter. The DOC Defendants' assert that Mr. Ford is neither entitled to nor can he obtain any further injunctive relief in this matter.

## VIII. REQUESTED AMENDMENTS TO THE PLEADINGS

None.

## IX. ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION

None.

## X. THE PROBABLE LENGTH OF THE TRIAL

The parties estimate that the trial should last 4-5 days with trial days running from 9 am to 1 pm.

## XI. IDENTIFICATION OF WITNESSES

The following are the names, addresses, and telephone numbers of witnesses the parties expect to call at trial, including expert witnesses, and the names of witnesses whose testimony is to be presented by means of deposition:

### A. Albert Ford

#### 1. Witnesses Whom Mr. Ford Expects To Call at Trial

| Name | Address | Telephone Number |
|---|---|---|
| Dr. Stuart Grassian, M.D. | 401 Beacon Street<br>Chestnut Hill, MA 02467 | (617) 244-3315 |
| Albert Ford | P.O. Box 100<br>South Walpole, MA 02071 | N/A |

Dr. Grassian is a board-certified psychiatrist, licensed to practice medicine in the Commonwealth of Massachusetts. Dr. Grassian is currently in private practice and was on the teaching staff of the Harvard Medical School from 1974 until 2002. Dr. Grassian has extensive experience evaluating the psychiatric effects of stringent conditions of confinement and the mental health care provided to inmates in such conditions. He has served as an expert witness in a number of cases addressing these issue, including in *Davenport v. DeRobertis*, 844 F.2d 1310

(7th Cir. 1988), *Madrid v. Gomez*, 889 F. Supp. 1146 (N.D. Cal. 1995), and *Haverty v. Commissioner of Correction*, 437 Mass. 737 (Mass. 2002). Dr. Grassian has also published four articles regarding the psychiatric effects of solitary confinement, including two that appeared in peer-reviewed psychiatric journals: Psychopathological Effects of Solitary Confinement", 140 Am. J. Psychiatry 1450 (1983); and "Effects of Sensory Deprivation in Psychiatric Seclusion and Solitary Confinement," 8 Intl. J. Law & Psychiatry 49 (1986).

**2. Witnesses Whose Testimony Mr. Ford Expects To Present by Means of Deposition**

| Name | Designated Deposition Testimony |
|---|---|
| James Bender | 21:23-23:1<br>25:3-20<br>26:6-9<br>39:22-40:15<br>45:7-46:11 |
| Peter St. Amand | 11:5-12:5<br>17:15-18:20<br>38:2-40:9<br>41:12-46:4<br>80:20-81:23<br>90:22-93:15 |
| Dale Bissonnette | 11:15-12:23<br>17:14-23<br>30:5-33:5<br>36:17-49:22 |

**B. Defendants James Bender and Peter St. Amand**

Defendants expect to call the following witnesses, including expert witnesses, at trial in this matter:

(i) James Bender, former Deputy Commissioner of the Department of Correction, c/o Julie Daniele, Legal Division, 70 Franklin Street, Suite 600, Boston, MA 02110, (617) 727-3300.

(ii) Peter St. Amand, former Superintendent of the Department of Correction, c/o Julie Daniele, Legal Division, 70 Franklin Street, Suite 600, Boston, MA 02110, (617) 727-3300.

(iii) Carol Mici, Assistant Deputy Commissioner of Classification, PO Box 188, 1 Industries Drive, Norfolk, MA 02056, (508) 850-7750.

(iv) Dale Bissonnette, DDU Administrator, MCI-Cedar Junction, Route 1A, P.O. Box 100, South Walpole, MA 02071, (508) 660-8000.

(v) Ronald Duval, former Commissioner of Correction, c/o Julie Daniele, Legal Division, 70 Franklin Street, Suite 600, Boston, MA 02110, (617) 727-3300.

(vi) Luis Spencer, Commissioner of Correction, 50 Maple Street, Suite 3, Milford, MA 01757, (508) 422-3300.

(vii) Peter Pepe, Acting Assistant Deputy Commissioner, Southern Sector, 15 Administration Road, Bridgewater, MA 02324, (508) 279-3801.

(viii) Christopher Fallon, Director of Communications and Outreach (former Captain DDU), Milford Headquarters, 50 Maple Street, Suite 3, Milford, MA 01757, (508) 422-3300.

(ix) Lt. Jeff Smith, MCI-Cedar Junction, Route 1A, PO Box 100, South Walpole, MA 02071 (508) 660-8000.

(x) CO Scott Black, MCI-Cedar Junction, Route 1A, PO Box 100, South Walpole, MA 02071 (508) 660-8000.

(xi) Joel Andrade, Ph.D, LICSW, Director of Clinical Programs, Massachusetts MHM Services, Inc., Massachusetts Regional Office, Norton Commerce Center, 50 Commerce Way, Norton, MA 02766, (508) 285-4018.

(xii) Dr. Bernard A. Katz MD, 22 Rosalie Road, Newton Center, MA 02459, (617) 244-4510.

Dr. Katz is being called as an expert witness in this case. He is a board certified psychiatrist licensed to practice in Massachusetts. Presently, he is in private practice in the areas of general and forensic psychiatry while also holding the position of Chief of Psychiatry for the Worcester County Jail and House of Correction. Dr. Katz's prior positions include psychiatrist

in chief of Tufts New England Medical Center and Medical Director of Bridgewater State Hospital. In addition, Dr. Katz has served as an expert witness in numerous other cases.

## XII. EXHIBITS

### A. Joint List of Exhibits

The following is a joint list of exhibits to which there are no objections in order of their introduction to the Court:

| Exhibit | Description |
|---|---|
| 1 | DDU Handbook |
| 2 | 103 CMR 420.00, et seq. |

### B. List of Exhibits To be Offered at Trial

The following is a list of exhibits as to which one of the parties reserves a right to object:

| Exhibit | Description | Objecting Party |
|---|---|---|
| A | UMASS Correctional Health: Sick Call Request Form by Ford | Defendants |
| B | UMASS Correctional Health: Sick Call Request Form by Ford | Defendants |
| C | 103 CMR 421.00, et seq. | Plaintiff |
| D | 103 CMR 423.00, et seq. | Plaintiff |
| E | 103 CMR 430.00, et seq. | Plaintiff |
| F | Certified Copies of Convictions of Albert Ford (total of 9, specifics provided to plaintiff) | Plaintiff |
| G | June 22, 2006 Correspondence from Albert Ford to Stuart Grassian | Plaintiff |
| H | June 22, 2007 Correspondence from Stuart Grassian to the Honorable Judith Fabricant | Plaintiff |
| I | October 18, 2008 Correspondence from Stuart Grassian to Albert Ford | Plaintiff |
| J | High-Risk Offender Management Program Completion Certificate | Plaintiff |
| K | DDU Evaluation Forms of Ford | Plaintiff |
| L | Disciplinary Reports of Albert Ford: MCI-Cedar Junction Disciplinary Report 01-0079; MCI-Cedar Junction Disciplinary Report 02-2075; MCI-Cedar Junction Disciplinary Report 50534; | Plaintiff |

| Exhibit | Description | Objecting Party |
|---|---|---|
| | MCI-Cedar Junction Disciplinary Report 46821; MCI-Cedar Junction Disciplinary Report 61468 | |
| M | Any and all medical and/or mental health records of Albert Ford as appropriate based upon Ford and Grassian's testimony, including but not limited to the May 20, 2011 progress note of Dr. Joel Andrade, medical evidence of Ford's serious medical conditions, medical/mental health records surrounding any medical care received and/or follow-up as a result of Ford's sick call requests, and mental health records cited by Dr. Grassian | Plaintiff |

In addition, Mr. Ford is moving *in limine* to take and introduce photographs of the DDU and to show the jury the shackles used to restrict him in the DDU. The DOC Defendants will state their objections to those proposed exhibits in their opposition to the motion *in limine*.

## XIII. PARTIES' POSITIONS ON REMAINING EVIDENTIARY OBJECTIONS

### A. Albert Ford

#### 1. Exhibits

The DOC Defendants have failed to comply with Fed. R. Civ. P. 26(a)(3). While the DOC Defendants' disclosures identify some exhibits with specificity, the disclosures also include a statement purporting to "reserve the right" to submit into evidence "any and all medical and/or mental health records of Albert Ford as appropriate based upon Ford and Grassian's testimony." (Exhibit M, Defendants' Pretrial Disclosures.) Mr. Ford objects to this blanket designation as it fails to comply with Fed. R. Civ. P. 26(a)(3)(A), which requires "identification of each document or other exhibit" submitted by a party as part of its pretrial disclosures. Mr. Ford cannot object more specifically because he does not know what documents the DOC Defendants plan on introducing from the many materials they have listed under the heading of Exhibit M. However, Mr. Ford objects to the use of any document, medical record, or mental health record of Mr. Ford by the DOC Defendants at trial at least for the reason that it was not appropriately and

specifically identified in the DOC Defendants' pretrial disclosures, unless it is introduced solely for impeachment.

| Defendants' Proposed Exhibits | Description | Mr. Ford's Objection |
|---|---|---|
| C | 103 CMR 421.00 (Departmental Segregation Unit), et seq. | This exhibit is irrelevant to the issue of damages (Fed. R. Evid. 401, 402). In addition, its probative value is substantially outweighed by the danger of unfair prejudice (Fed. R. Evid. 403). |
| D | 103 CMR 423.00 (Special Management), et seq. | This exhibit is irrelevant to the issue of damages (Fed. R. Evid. 401, 402). In addition, its probative value is substantially outweighed by the danger of unfair prejudice (Fed. R. Evid. 403). |
| E | 103 CMR 430.00 (Disciplinary Proceedings), et seq. | This exhibit is irrelevant to the issue of damages (Fed. R. Evid. 401, 402). In addition, its probative value is substantially outweighed by the danger of unfair prejudice (Fed. R. Evid. 403). |
| F | Certified copies of the following criminal convictions of Albert Ford:<br><br>i. Docket NOCR020676001; NOCR020676002; NOCR020676003: Assault with Intent to Kill; disposition date: 4/30/08;<br><br>ii. Docket NOCR020676004; NOCR020676005: A&B Dangerous Weapon; disposition date: 4/30/08<br><br>iii. Docket NOCR020676006; NOCR020676007: A&B on a Correctional Institution Officer; disposition date: 4/30/08<br><br>iv. Docket NOCR020676008; NOCR020676009; NOCR020676010: Assault with a Dangerous Weapon; | This exhibit is irrelevant to the issue of damages (Fed. R. Evid. 401, 402). In addition, its probative value is substantially outweighed by the danger of unfair prejudice (Fed. R. Evid. 403). |

| Defendants' Proposed Exhibits | Description | Mr. Ford's Objection |
|---|---|---|
| | disposition date: 4/30/08;<br>v. Docket NOCR 020676011: Kidnapping; disposition date: 4/30/08;<br><br>vi. Docket NOCR 02067612: Assault and Battery; disposition date: 4/30/08;<br><br>vii. Docket NOCR 070666001: Distribute/Dispense a Class A; disposition date: 4/30/08;<br><br>viii. Docket NOCR 070666002: Attempt to Commit Crime; disposition date: 4/30/08;<br><br>ix. Docket Middlesex Superior 91447: Armed Robbery: disposition date: 4/21/92; release from State Prison on this charge: January 2007. | |
| G | June 22, 2006 Correspondence from Albert Ford to Stuart Grassian, Bates Ford000430-431, along with undated Correspondence to Dr. Grassian, Bates Ford000432-434. | This exhibit is irrelevant to the issue of damages (Fed. R. Evid. 401, 402). In addition, its probative value is substantially outweighed by the danger of unfair prejudice (Fed. R. Evid. 403).<br><br>Mr. Ford also objects to this exhibit as inadmissible hearsay (Fed. R. Evid. 801, 802). |
| H | June 22, 2007 Correspondence from Stuart Grassian to the Honorable<br>Judith Fabricant, Bates Ford 000460-470. | This exhibit is irrelevant to the issue of damages (Fed. R. Evid. 401, 402). In addition, its probative value is substantially outweighed by the danger of unfair prejudice (Fed. R. Evid. 403).<br><br>This exhibit constitutes inadmissible hearsay (Fed. R. Evid. 801, 802). |
| I | October 18, 2008 Correspondence from Stuart Grassian to Albert Ford, | This exhibit is irrelevant to the issue of damages (Fed. R. Evid. 401, 402). In addition, its probative value is substantially outweighed by the danger of unfair |

| Defendants' Proposed Exhibits | Description | Mr. Ford's Objection |
|---|---|---|
| | Bates Ford 00351. | prejudice (Fed. R. Evid. 403).<br><br>This exhibit constitutes inadmissible hearsay (Fed. R. Evid. 801, 802). |
| J | High-Risk Offender Management Program completion certificate. | This exhibit is irrelevant to the issue of damages (Fed. R. Evid. 401, 402). In addition, its probative value is substantially outweighed by the danger of unfair prejudice (Fed. R. Evid. 403).<br><br>This exhibit constitutes inadmissible hearsay (Fed. R. Evid. 801, 802). |
| K | DDU Evaluation Forms of Mr. Ford. | This exhibit is irrelevant to the issue of damages (Fed. R. Evid. 401, 402). In addition, its probative value is substantially outweighed by the danger of unfair prejudice (Fed. R. Evid. 403).<br><br>This exhibit constitutes inadmissible hearsay (Fed. R. Evid. 801, 802).<br><br>Mr. Ford objects to this blanket designation as it fails to comply with Fed. R. Civ. P. 26(a)(3)(A), which requires "identification of each document or other exhibit" submitted by a party as part of its pretrial disclosures. Further, insofar as the documents have not been specifically identified and he cannot determine whether they are authentic, Mr. Ford objects to this exhibit as lacking authentication (Fed. R. Evid. 901). |
| L | Disciplinary Reports of Albert Ford: MCI-Cedar Junction DDU referred Disciplinary Report 01-0079, dated January 9, 2001, charging Ford with conspiring to assault another inmate; MCI-Cedar Junction DDU referred Disciplinary Report 02-2075, dated October 9, 2002, charging Ford with assaulting officers with a weapon and holding a nurse hostage; MCI-Cedar Junction | This exhibit is irrelevant to the issue of damages (Fed. R. Evid. 401, 402). In addition, its probative value is substantially outweighed by the danger of unfair prejudice (Fed. R. Evid. 403).<br><br>This exhibit constitutes inadmissible hearsay (Fed. R. Evid. 801, 802).<br><br>Mr. Ford also objects to this exhibit as lacking authentication (Fed. R. Evid. 901). |

| Defendants' Proposed Exhibits | Description | Mr. Ford's Objection |
|---|---|---|
| | DDU referred Disciplinary Report 50534, dated January 28, 2005, charging Ford with attempting to plan and assist with a possible home invasion and burglary and attempting to plan and assist with introducing a controlled substance into a State Correctional Institution;<br>MCI-Cedar Junction DDU referred Disciplinary Report 46821, dated November 17, 2004, charging Ford with threatening to kill an officer;<br>MCI-Cedar Junction DDU referred Disciplinary Report 61468, dated August 26, 2005, charging Ford with assaulting another inmate. | |
| M | Defendants reserve the right to submit into evidence any and all medical and/or mental health records of Albert Ford as appropriate based upon Ford and Grassian's testimony, including but not limited to the May 20, 2011 progress note of Dr. Joel Andrade, medical evidence of Ford's serious medical conditions, medical/mental health records surrounding any medical care received and/or follow-up as a result of Ford's sick call requests, and mental health records cited by Dr. Grassian. | Mr. Ford objects to this blanket designation as it fails to comply with Fed. R. Civ. P. 26(a)(3)(A), which requires "identification of each document or other exhibit" submitted by a party as part of its pretrial disclosures.<br>Mr. Ford also objects to these exhibits as inadmissible hearsay (Fed. R. Evid. 801, 802).<br>Mr. Ford also objects to this exhibit as lacking authentication (Fed. R. Evid. 901). |

**2. Witnesses**

a) Ronald Duval, Luis Spencer, Peter Pepe, Christopher Fallon, Jeff Smith, Scott Black, Joel Andrade

Mr. Ford objects to the testimony of Ronald Duval; Luis Spencer; Peter Pepe; Christopher Fallon; Jeff Smith; Scott Black; and Joel Andrade. None of these individuals have

ever been designated in any of the DOC Defendants' Fed. R. Civ. P. 26 disclosures or in any interrogatory responses as likely to have discoverable information. Mr. Ford has no knowledge as to what these witnesses would testify about and has not had an opportunity to depose them.

**B. The DOC Defendants**

**1. Exhibits**

A. The DOC Defendants object to submission to the jury of this Court's Memorandum of Decision and Order on the Parties' Motions for Summary Judgment on the grounds that (1) it is irrelevant; (2) it is unduly prejudicial and will mislead the jury; and (3) it is inadmissible hearsay.

B. The DOC Defendants object to Plaintiff's two (2) sick call requests being included as exhibits on the grounds that these exhibits are (1) irrelevant; (2) unduly prejudicial and will mislead the jury; (3) inadmissible hearsay.

**2. Deposition Designations**

The DOC Defendants object to the following deposition testimony:

A. Peter St. Amand: defendants object to the following pages/lines: 38:2-40:9; 41:12 – 46:4; 81:18-23; 90:22 – 93:15.

B. Dale Bissonnette: defendants object to the following pages/lines: 11:22-23; 12:1-23; 30:5-33:5, 36:17-49:22.

**3. Witnesses**

The DOC Defendants object to the testimony of Dr. Stuart Grassian.

Respectfully submitted,

JAMES BENDER and PETER ST. AMAND
By their attorneys,

Nancy Ankers White
Special Assistant Attorney General

/s/ Julie E. Daniele
Julie E. Daniele, BBO #600093
Kevin A. Anahory, BBO #564002
Department of Correction
70 Franklin Street, Suite 600
Boston, MA 02110-1300
Tel: (617) 727-3300

ALBERT FORD
By his attorneys,

/s/ Anant Saraswat
Lisa J. Pirozzolo, BBO # 561922
Emily R. Schulman, BBO # 566374
Timothy D. Syrett, BBO # 663676
Dimple Chaudhary, BBO # 674845
Anant Saraswat, BBO # 676048
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Dated: July 5, 2011

**CERTIFICATE OF SERVICE**

I, Anant Saraswat, hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic court filing (ECF) system, this 5th day of July, 2011.

/s/ Anant Saraswat
Anant Saraswat, BBO # 676048