UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALBERT FORD,<br><br>              Plaintiff,<br><br>v.<br><br>JAMES BENDER, Deputy Commissioner of Correction; PETER ST. AMAND, Superintendent of MCI-Cedar Junction,<br><br>              Defendants. | Civil Action No. 07-11457-JGD |

## PLAINTIFF ALBERT FORD'S TRIAL BRIEF

Pursuant to the Court's November 16, 2010 Order and Local Rule 16.5(F), Plaintiff Albert Ford hereby submits his Trial Brief.

**I.    MOTIONS *IN LIMINE***

Mr. Ford is filing separately the following motions *in limine*:

1. Motion *In Limine* to Exclude Prior Convictions and Prison Disciplinary History;

2. Motion *In Limine* to Preclude References to Alternate Housing Placements;

3. Motion *In Limine* to Preclude Testimony of Defendants' Expert Dr. Katz;

4. Motion *In Limine* to Attend Trial;

5. Motion *In Limine* To Permit His Appearance at Trial in Civilian Clothing and Without Shackles;

6. Motion *In Limine* to Take and Admit Photographic Evidence of Prison Conditions in the DDU;

7. Motion *In Limine* to Exclude References to Prisoner Litigation.

## II.     PROPOSED STATEMENT TO BE READ TO THE VENIRE DURING EMPANELMENT

If you serve as a juror in this case, you will be asked to decide what compensation the plaintiff, Albert Ford, is entitled to based on the violation of his constitutional rights by the defendants James Bender and Peter St. Amand in 2007 and 2008.  Mr. Bender is the former Deputy Superintendent of the Department of Correction.  Mr. St. Amand is the former Superintendent of Massachusetts Correctional Institute at Cedar Junction.

In an earlier proceeding in this case I have already found that the defendants violated Mr. Ford's constitutional rights by confining him in maximum security, solitary confinement for 375 days when Mr. Ford was a pretrial detainee.  A pretrial detainee is an individual who has been accused, but not convicted of a crime and is therefore presumed innocent.

Under the Fourteenth Amendment of the United States Constitution as well as the Massachusetts Declaration of Rights, a pretrial detainee has a right not to be punished prior to conviction.  The rights that protect a pretrial detainee from such punishment are referred to as substantive due process rights.  I concluded that the Defendants violated Mr. Ford's substantive due process rights under both the United States Constitution and the Massachusetts Declaration of Rights by confining him in the Department of Correction's Departmental Disciplinary Unit, which is referred to as the DDU, as a pretrial detainee with the purpose of punishing him.  The DDU is a solitary confinement unit that is used to punish and discipline inmates and where, among other restrictions, they are confined in their cells about 23 hours a day.

Pretrial detainees also have what are called procedural due process rights under the due process clause of the Fourteenth Amendment to the Constitution as well as the Massachusetts Declaration of Rights.  Under procedural due process rights, before a pretrial detainee can be put in solitary conditions like in the DDU, they are entitled to a hearing.  I also concluded that the

Defendants violated Mr. Ford's procedural due process rights under the Constitution and the Massachusetts Declaration of Rights by confining Mr. Ford to the DDU as a pretrial detainee without any hearing or process to determine whether the conditions of his confinement were appropriate.

I also found that the law governing Mr. Ford's due process rights as a pretrial detainee was clearly established, and so the defendants were not immune from Mr. Ford's request for monetary damages.

Given these findings that the Defendants violated Mr. Ford's constitutional rights, the only remaining issue for the jury in this case will be to decide an appropriate amount of damages to compensate him for those constitutional violations.

### III.   PROPOSED QUESTIONS FOR VOIR DIRE EXAMINATION

Mr. Ford proposes the following questions for the voir dire examination of the jury. Mr. Ford reserves the right to supplement or revise these questions after the Court has ruled on the parties' motions *in limine*.

1.   Albert Ford, Jr. is the plaintiff in this case. Do you, or does anyone close to you, know him or know of him?

2.   James Bender is a defendant in this case. He is the former Commissioner of the Massachusetts Department of Correction. Do you, or does anyone close to you, know him or know of him?

3.   Peter St. Amand is a defendant in this case. He is the former Superintendent of MCI Cedar Junction. Do you, or does anyone close to you, know him or know of him?

4.   Defendants are represented here today by Julie Daniele, Kevin Anahory, and William Saltzman from the Department of Correction. If any of you, or your family or friends, are personally acquainted with these lawyers, even if it's a casual acquaintance, please raise your hand.

5.   Mr. Ford is being represented here today by Lisa Pirozzolo, Emily Schulman, Timothy Syrett, Dimple Chaudhary, and Anant Saraswat from Wilmer Cutler Pickering Hale and Dorr

LLP.  If any of you, or your family or friends, are personally acquainted with these lawyers or their firm, even if it's a casual acquaintance, please raise your hand.

6.      I am going to tell you the names of other people who are involved in this case.  If you, or if anyone close to you, is personally acquainted with anyone, even if it's a very brief or casual acquaintance, please raise your hand. [COURT TO INSERT LIST OF WITNESSES].

7.      While the Massachusetts Department of Correction is not a defendant in this lawsuit, it does have a direct involvement.  Do you, or does anyone close to you, have any of the following relationships with the Department of Correction?

   A.   Employee or ex-employee

   B.   Vendor

   C.   Provider of services

   D.   Friend or relative of anyone currently for formerly employed or seeking employment there

   E.   Partial or total financial dependence upon the Department of Correction or its presence in this community

8.      Do any of you know each other?  Do you have any contact at all with any person here in this room — whether as neighbors, coworkers, members of the same organization, or relatives?

9.      Have you, a family member, or close friend ever sought employment from, or been employed by, the Commonwealth of Massachusetts?

10.     Have you, a family member, or a close friend ever sought employment from, or been employed by, any federal, state or local law enforcement?

11.     Have you, a family member, or a close friend ever sought employment from, or been employed by, any prison or correctional institution?

12.     Have you, a family member, or a close friend ever been the victim of a crime?

13.     Have you had any legal education or training?

14.     Have you ever served on a jury in the past?  What type of case?

15.     Have you ever been a witness at trial or deposition in any case in the past?

16.     Have you ever been a witness to a crime?

17.     Have you ever been a party to a civil case in the past?

18.     The plaintiff, Mr. Ford, is currently incarcerated at MCI Cedar Junction.  Does knowing that affect your ability to impartially evaluate the merits of this lawsuit?

- 4 -

19. Do you have any objections, reservations, concerns or predispositions about inmates filing lawsuits against the Department of Corrections?

20. Do you believe that prisoners are not sufficiently punished at correctional institutions?

21. Do you believe that corrections officers can or should use force to punish prisoners?

22. Do you know anything about the conditions of confinement at correctional facilities?

23. Do you have any predispositions about the conditions of confinement to which inmates should be subject in correctional facilities?

24. This case involves allegations by a prisoner against prison guards. Do you have any strong feelings about lawsuits against correction officers or law enforcement personnel that you think might affect your ability to impartially evaluate the merits of this action?

25. Do you think that prisoners should not bring lawsuits against correction officers or law enforcement personnel?

26. Do you believe a corrections officer is more or less likely to tell the truth than an ordinary citizen?

27. Do you believe an inmate at a correctional institution is more or less likely to tell the truth than an ordinary citizen?

28. Do you believe a corrections officer is more or less likely to tell the truth than an inmate at a correctional institution?

29. Mr. Ford filed this suit against the defendants alleging that they unlawfully held him in maximum security, solitary confinement while he was a pretrial detainee. Is there anything about the nature of these charges that would prevent you from being impartial in this case?

30. Do you believe that someone who is charged with a crime is likely guilty of that crime?

31. Mr. Ford is seeking damages from the defendants for the harm he alleges they caused him. Would you have any reservations returning a money award compensating Mr. Ford for that harm?

32. Do you think that inmates should not receive money damages for mental or emotional distress based on their conditions of confinement??

33. Does anything concern or trouble you about lawsuits brought by inmates that seek money damages?

34. What about inmates seeking monetary damages for constitutional violations?

35.     Mr. Ford is African-American. Is there anything about his race that would prevent you from being impartial in this case?

36.     Are you aware of any prejudice which you may have against the plaintiff or the defendant which would in any way affect your ability to fairly and impartially evaluate and judge the facts of the case?

37.     Is there anyone who, for any reason, thinks that they would not be able to impartially evaluate the merits of this case?

## IV.     REQUESTS FOR INSTRUCTIONS TO THE JURY

### 1.     The Court's Prior Findings

I have already found that Defendants James Bender and Peter St. Amand violated Plaintiff Albert Ford's constitutional rights by confining him in maximum security, solitary confinement for 375 days when Mr. Ford was a pretrial detainee.

More specifically, I concluded that the Defendants violated Mr. Ford's substantive due process rights under the Fourteenth Amendment of United States Constitution and the Massachusetts Declaration of Rights by confining him in the Department of Correction's Departmental Disciplinary Unit, called the DDU, as a pretrial detainee for the purpose of punishment. (Summary Judgment Order (Docket No. 130) at 22-26.)  A pretrial detainee has a due process right to be free from punishment prior to conviction.  (*Id.* at 20.)  The distinction between the rights of pretrial detainees and persons serving a sentence cannot be ignored.  (*Id.* at 24.)  I also found that the right of pretrial detainees to be free from punishment prior to conviction was clearly established, and so the defendants are not immune from Mr. Ford's request for monetary damages.  (*Id.* at 38-39.)

Therefore, the question for you, the jury, to consider is what monetary damages Mr. Ford is entitled to because of the Defendants' violation of his constitutional and state- protected rights.

## 2.     Jury Considerations

Your decision must be based solely upon the evidence developed at this trial. It would be improper for you to consider any personal feelings you may have about one of the party's race or national origin. It would be equally improper for you to allow any feelings you might have about the nature of the claims to influence you in any way.

Mr. Ford's current status as a convicted inmate should have no bearing on your deliberations. The fact that he is presently incarcerated is not relevant to whether he suffered damages from the Defendants' violations of his constitutional rights and the amount of those damages.

- *Ham v. South Carolina*, 409 U.S. 524 (1973); *In re Murchison*, 349 U.S. 133 (1955); 4-71 Modern Federal Jury Instructions-Civil, ¶ 71-9 (Matthew Bender); *Holloway v. Alexander,* 957 F.2d 529, 530 (8th Cir. 1992);

## 3.     Witness Credibility

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his testimony. It must be clear to you by now that you are being called upon to resolve various factual issues raised by both parties in the face of very different pictures painted by both sides. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

How do you determine where the truth lies? You watched each witness testify.

Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he appear to be frank, forthright, and candid, or evasive and edgy as if hiding something?  How did the witness appear; what was his demeanor, that is, his carriage, behavior, bearing, manner and appearance while testifying?  Often it is not what a person says but how he says it that moves us. In other words, what you must try to do in deciding credibility is to size up a witness in light of his or her demeanor; the explanations given and all the other evidence in this case.

> - *Sartor v. Ark. Nat'l Gas Corp*, 321 U.S. 620 (1944); 4-76 Modern Federal Jury Instructions-Civil, ¶ 76.01 (Matthew Bender).

**4.     Bias**

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.  It is your duty to consider whether the witness has permitted any such bias or interest to color his testimony. In short, if you find that a witness is biased, you should view his testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

> - *Davis v. Alaska*, 415 U.S. 308 (1974); 4-76 Modern Federal Jury Instructions-Civil, ¶ 76.02 (Matthew Bender).

**5.     Damages**

Federal law provides that Mr. Ford may recover damages because Defendants James Bender and Peter St. Amand, deprived Mr. Ford of due process rights guaranteed by the Constitution.  You will assess an amount you find to be justified as full, just and reasonable

compensation for all Mr. Ford's damages caused by the Defendants' conduct.  These are called compensatory damages.  Compensatory damages seek to make the plaintiff whole, that is, to compensate him for the damage suffered.  Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize the Defendants.

You must assess damages in an amount you find to be justified by a preponderance of the evidence.  What does a preponderance of the evidence mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial.  That requirement does not apply to a civil case, and you should put it out of your mind.

It is not necessary for Mr. Ford to prove the amount of his damages with certainty. On the other hand, he is not to be awarded purely speculative damages.  You may consider awarding damages in an amount for the harm Mr. Ford endured or will endure as a result of his unconstitutional confinement in the DDU as a pretrial detainee.  This may be difficult for you to measure in terms of dollars and cents, but there is no other rule I can give you for assessing this element of damages.  Even though it is obviously difficult to establish a standard of measurement, that difficulty is not grounds for denying recovery.

If you find that Mr. Ford is entitled to damages for losses that will occur in the future, you will have to reduce this amount, whatever it may be, to its present worth.  The reason for this is that a sum of money that is received today is worth more than the same money paid out in installments over a period of time since a lump sum today, such as any amount you might award in your verdict, can be invested and earn interest in the years ahead.

- *Memphis Community School District v. Stachura*, 477 U.S. 299, 306 (1986)

> *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931); Pattern Jury Instructions for Cases of Excessive Force in Violation of the Fourth, Eighth, and Fourteenth Amendments For the District Courts of the United States Court of Appeals for the First Circuit (June 14, 2002 Draft, updated October 29, 2007) available at http://www.med.uscourts.gov/practices/Excessive%20Force.pdf; *Romano v. U-Haul Int'l*, 233 F.3d 655 (1st Cir. 2000); 4-73 Modern Federal Jury Instructions-Civil, ¶¶ 73-1, 73-2 (Matthew Bender).

The elements of damages that you may consider are as follows:

1.  The reasonable value of each of the 375 days that Mr. Ford spent in the DDU that he would not have been confined there had his rights not been violated by the Defendants. While there is no precise way to calculate the value of a day spent in the DDU, you may consider the differences between the conditions in the DDU and the conditions in general population, including differences in opportunities for time spent out of his cell; the number of visits and phone calls that he was allowed; opportunities for interaction with other inmates; and the types of recreational opportunities, counseling services, vocational training, and other services available.

> - *Furtado v. Bishop*, 604 F.2d 80, 89 (1st Cir. 1979) (measure of damages for unlawful disciplinary segregation is "clearly the difference between the harsher . . . conditions suffered in segregation and the conditions that prevailed in the general prison population"); *Shaheed-Muhammad v. Dipaolo*, 138 F. Supp. 2d 99, 107-109 (D. Mass. 2001) (holding that Due Process "is offended when state actors deprive someone of constitutionally protected liberty or property interests without adequate procedural safeguards, irrespective of attendant physical harm."); *Ustrak v. Fairman*, 781 F.2d 573,

578 (7th Cir. 1986), *cert. denied*, 479 U.S. 824 (1986) ("[t]he loss of amenities within prison is a recoverable item of damages," provable by testimony concerning differences in physical conditions, daily routine, etc.); *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002) (compensatory damages available when premised on unconstitutional conditions of pre-trial confinement).

2. The mental and emotional distress Mr. Ford suffered, if accompanied by more than minimal physical injury. A minimal physical injury should be more than *de minimus*, but need not be significant. No evidence of the dollar value of Mr. Ford's mental and emotional distress needs to be introduced; there is no exact standard for setting the damages to be awarded on account of mental and emotional distress. You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view but from a fair and impartial point of view, of the amount of mental and emotional distress that Mr. Ford suffered and will suffer as a result of the violations of his rights, and you must place a money value on this.

- 42 U.S.C. § 1997e(e); *Williams v. Goord*, 111 F. Supp. 2d 280 (S.D.N.Y. 2000) (**"**Deprivation of exercise for an extended period of time is potentially injurious to physical health" and may constitute a "physical injury" for the purposes of 42 U.S.C. § 1997e's requirement.); *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) ("In the absence of any definition of 'physical injury' in the new statute, we hold… the injury must be more than de minimus, but need not be significant."); *Gomez v. Chandler*, 163 F.3d 921 (5th Cir. 1999) (allegations of cuts and abrasions satisfy physical injury requirement); *Ramirez v. Ferguson*, No. 08-cv-5038, 2011 U.S. Dist. LEXIS 34625, *59-60 (W.D. Ark. Mar. 29, 2011) (plaintiff inmate "entitled to recover for both the physical

pain and emotional suffering he suffered from being denied his medications" and awarded money damages in § 1983 case).

3.   The physical pain and suffering Mr. Ford experienced and is reasonably certain in the future.  No evidence of the dollar value of Mr. Ford's physical pain and suffering needs to be introduced; there is no exact standard for setting the damages to be awarded on account of pain and suffering.  You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view but from a fair and impartial point of view, of the amount of physical pain and suffering that Mr. Ford suffered and will suffer as a result of the violations of his rights, and you must place a money value on this.

> - *Hendrickson v. Cooper*, 589 F.3d 887, 890-91 (7th Cir. 2009) (affirming jury award of compensatory damages for prisoner's pain and suffering in a § 1983 action); *McClary v. Coughlin*, 87 F. Supp. 2d 205 (W.D.N.Y. 2000), *aff'd* 237 F.3d 185 (2d Cir. 2001).

4.   If you find that Mr. Ford has not proven any actual injury caused by the violation of his constitutional rights by the Defendants, you must nevertheless award Mr. Ford nominal or token damages such as One Dollar ($1) or some other minimal amount. This is so because the law recognizes that the denial of constitutional rights is itself an injury that should be recognized without regard to whether actual damages have been proven.

> - Pattern Jury Instructions for Cases of Excessive Force in Violation of the Fourth, Eighth, and Fourteenth Amendments For the District Courts of the United States Court of Appeals for the First Circuit (June 14, 2002 Draft, updated October 29, 2007) available at http://www.med.uscourts.gov/practices/Excessive%20Force.pdf

## V. VERDICT FORM

We, the jury in the above-entitled action, having been duly impaneled and sworn to the issues, find the following special verdict on the questions submitted to us:

1.  Was Mr. Ford harmed by the deprivation of his substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution and the Massachusetts Declaration of Rights when he confined to the DDU for 375 days as a pretrial detainee?

    Yes____                              No_____

If you answered this question yes, in what amount should Defendant James Bender compensate Mr. Ford for the violation of his constitutional rights? _____

If you answered this question yes, in what amount should Defendant Peter St. Amand compensate Mr. Ford for the violation of his constitutional rights? _____

## VI. PROPOSED FINDINGS OF FACT AND REQUESTED RULINGS OF LAW FOR INJUNCTIVE RELIEF

### Finding of Fact

Facts relevant to injunctive relief related to the parties; the Departmental Disciplinary Unit ("DDU") at Superintendent of Massachusetts Correctional Institute at Cedar Junction ("MCI-Cedar Junction"); conditions of confinement in the DDU; Mr. Ford's period of confinement in the DDU as a pretrial detainee; and Mr. Ford's period of confinement in the DDU as a convicted inmate have been determined by the Court's September 30, 2010 Order on Summary Judgment. (Docket No. 130 (Memorandum of Decision and Order on Parties' Motion for Summary Judgment Decision).)

Additional findings of fact relevant to injunctive relief include:

1.      After the Court's September 30, 2010 Order, Mr. Ford was retained in the DDU by the DOC.

2.      Mr. Ford has spent 278 days in the DDU since the Court's September 30, 2010 Order on Summary Judgment was issued.

3.      From September 30, 2010 to December 13, 2010, Mr. Ford was not provided with any hearing prior to being retained in the DDU.

4.      Since December 13, 2010, Mr. Ford has been retained in the DDU based on allegations by the DOC which have been challenged by Mr. Ford.

5.      Mr. Ford remains incarcerated in the DDU today.

**Rulings of Law**

1.      Mr. Bender and Mr. St. Amand are hereby enjoined, in both their official and individual capacities, from further violating Mr. Ford's substantive due process rights under the United States Constitution and the Massachusetts Declaration of Rights by confining Mr. Ford in the Department of Correction's Departmental Disciplinary Unit ("DDU") as a pretrial detainee as punishment for misconduct that occurred while Mr. Ford was serving a prior sentence.

   --*See* Docket No. 140 (November 16, 2010 Order on Summary Judgment) at ¶ 2.

2.      Mr. Bender and Mr. St. Amand are hereby enjoined, in both their official and individual capacities, from further violating Mr. Ford's procedural due process rights under the United States Constitution and the Massachusetts Declaration of Rights by confining Mr. Ford in the DDU as a pretrial detainee, based on disciplinary proceedings that occurred while Mr. Ford was serving a prior sentence, without affording him a new hearing.

   --*See* Docket No. 140 (November 16, 2010 Order on Summary Judgment) at ¶ 3.

3. Mr. Bender is hereby enjoined, in both his official and individual capacities, from further violating Mr. Ford's procedural due process rights under the United States Constitution and the Massachusetts Declaration of Rights by confining Ford in the DDU following his 2008 conviction, without affording him a new hearing.

---*See* Docket No. 140 (November 16, 2010 Order on Summary Judgment) at ¶ 3.

4. Mr. Ford's 10-year disciplinary sanction issued in 2002 is no longer in force and effect.

5. Mr. Ford shall be released immediately from the DDU, and a classification hearing pursuant to 103 Code Mass. Regs. 420.00 shall be held within five (5) days of the date of this Judgment to determine Mr. Ford's appropriate placement outside of the DDU.

6. Mr. Bender, in his capacity as Deputy Commissioner of Correction, is hereby ordered to submit a proposal within 30 days of the date of this Judgment for approval by the Court detailing a program to assist Mr. Ford with (1) his transition from the restrictive conditions of confinement in the DDU and (2) his preparation for release from incarceration. Mr. Bender and Mr. St. Amand, shall further submit to the Court a status report every three months through completion of Ford's current sentence of incarceration describing Mr. Ford's conditions of confinement and participation in the above-described transition program.

7. Mr. Bender, in his capacity as Deputy Commissioner of Correction, is hereby ordered to ensure Mr. Ford's participation in any existing transitional, education, or counsel programs that are provided by the correctional institutional at which Mr. Ford is housed, and for which he qualifies as determined by the Department of Correction, for the duration of Mr. Ford's criminal sentence.

8.     Pursuant to Rule 54 of the Federal Rules of Civil Procedure, it is hereby ordered that Mr. Ford is entitled to costs.  Mr. Ford shall submit a motion within fourteen (14) days of entry of this Judgment setting forth his costs and may also seek reasonable attorneys' fees.

9.     This relief is narrowly tailored and extends no further than necessary to correct the violations of Mr. Ford's rights.

 

                ALBERT FORD
                By his attorneys,

                <u>/s/ Dimple Chaudhary</u>
                Lisa J. Pirozzolo, BBO # 561922
                Emily R. Schulman, BBO # 566374
                Timothy D. Syrett, BBO # 663676
                Dimple Chaudhary, BBO # 674845
                Anant Saraswat, BBO # 676048
                Wilmer Cutler Pickering Hale and Dorr LLP
                60 State Street
                Boston, Massachusetts  02109
                Tel:  (617) 526-6000
                Fax:  (617) 526-5000

Dated: July 5, 2011

## **CERTIFICATE OF SERVICE**

      I, Dimple Chaudhary hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic court filing (ECF) system, this 5th day of July, 2011.

                                                     /s/ Dimple Chaudhary
                                                     Dimple Chaudhary, BBO # 674845