UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALBERT FORD,                          )
                                      )
            Plaintiff,                )
      v.                              )        CIVIL ACTION
                                      )        NO. 07-11457-JGD
JAMES BENDER, et al.,                 )
                                      )
            Defendants.               )

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S RENEWED MOTION FOR ATTORNEYS' FEES AND COSTS

August 27, 2015

DEIN, U.S.M.J.

## I.  INTRODUCTION

The First Circuit has remanded this matter for a recalculation of attorneys' fees and costs, consistent with its decision in Ford v. Bender, 768 F.3d 15 (1st Cir. 2014). Consequently, this matter is presently before the court on the "Plaintiff Albert Ford's Motion for Award of Attorneys' Fees and Costs."  (Docket No. 249).  Pursuant to this motion, plaintiff's counsel is seeking all of its costs ($20,456.36) and two-fifths of the original award of $258,000.00 in fees (i.e., $103,200.00), plus post-judgment interest, on the basis that the plaintiff "remains a prevailing party on two out of the five forms of relief (declaratory judgments, injunctions, and damages) originally granted[.]"  (Docket No. 250 at 3).  Defendants, in this court's view rather unhelpfully, argue generally that "[a] substantial reduction is in order."  (Docket No. 251 at 1).

For the reasons detailed herein, this court finds that plaintiff's proposal is more than generous, and is justified under the lodestar analysis and the PLRA. Lest there be any question, this court finds that the amount requested does not begin to fully compensate court-appointed counsel for the years spent providing the plaintiff with very high quality representation in a highly contentious case involving complex and unsettled questions of constitutional law. Consistent with the defendants' decision not to appeal this court's rulings that they had violated Ford's constitutional rights, the First Circuit left intact this court's findings of fact and rulings of law, and did not reach the merits of the constitutional claims. See Ford v. Bender, 768 F.3d at 28, n.9. Rather, the First Circuit ruled that the defendants were entitled to qualified immunity because "reasonable officials in the defendants' shoes would not have understood that their actions violated the plaintiff's constitutional rights" as "the law was not clearly established[.]" Id. at 23. Thus, the First Circuit recognized that there was no easy answer to the constitutional issues raised by this litigation. Id. at 24-28. Nevertheless, the Court held that Ford was the "prevailing party" as to two types of relief awarded, and remanded the matter for this court "to determine the appropriate amount of attorneys' fees and costs for these two forms of relief." Id. at 31. As many courts have recognized, "special government immunities that restrict civil rights plaintiffs' recoveries weigh in favor of – and certainly not against – awarding Section 1988 fees." Lefemine v. Wideman, 758 F.3d 551, 557 (4th Cir. 2014), and cases cited. This is such a case.

For the reasons detailed herein and in this court's earlier decision on fees and costs, plaintiff's motion for fees and costs is ALLOWED in its entirety.

## II.  STATEMENT OF FACTS

The history of this litigation has been well-documented, and need not be repeated here.  In addition to the First Circuit's decision, further details can be found in the following decisions: Ford v. Clarke (Ford I), 746 F. Supp. 2d 273 (D. Mass. 2010) (decision on cross motions for summary judgment); Ford v. Bender (Ford II), No. 07-11457, 2010 WL 4781757 (D. Mass. Nov. 16, 2010) (order on summary judgment); Ford v. Bender (Ford III), No. 07-11457, 2012 WL 262532 (D. Mass. Jan. 27, 2012) (post-trial findings of fact and rulings of law); Ford v. Bender (Ford IV); No. 07-11457, 2012 WL 1378651 (D. Mass. Apr. 19, 2012) (ruling on defendants' motion to vacate judgment); and Ford v. Bender (Ford V), 903 F. Supp. 2d 90 (D. Mass. 2012) (award of fees and costs).  Therefore, only the facts necessary to put this court's present decision in context will be addressed herein.

In May 2008, Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") was appointed to represent the plaintiff Albert Ford, who was incarcerated in the Department Disciplinary Unit ("DDU") at MCI-Cedar Junction as a pretrial detainee, and later as a convicted inmate, without a hearing.  In September 2010, summary judgment was entered in Ford's favor on his claim that his detention in the DDU without a hearing violated his constitutional rights.  This court entered two declarations in connection with Ford's claims against various defendants, separately addressing his detention "as a pretrial

3

detainee as punishment for misconduct that occurred while Ford was serving a prior sentence" and his confinement in the DDU as a convicted felon.  See Ford II, 2010 WL 4781757 at *1, ¶¶ 2, 3.  The First Circuit ruled that Ford is the prevailing party in connection with the declaratory judgment regarding his detention in the DDU as a convicted felon, since he obtained the relief he was seeking and the judgment was not moot when issued.  Ford v. Bender, 768 F.3d at 31.  See also Diffenderfer v. Gomez-Colon, 587 F.3d 445, 454 (1st Cir. 2009) ("When plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still 'prevailing parties' for the purposes of attorney's fees for the district court litigation.").  As a result, the First Circuit concluded that Ford is entitled to fees and costs in connection with this relief.  Ford v. Bender, 768 F.3d at 31.  On the other hand, the Court further ruled that the other declaration, relating to Ford's detention as a pre-trial detainee, was moot when issued.  Id.

A three day jury-waived trial on the issue of damages was held in July 2011.  This court awarded Ford $47,500 in damages, and injunctive relief (1) declaring his DDU sanction satisfied, and (2) ensuring his access to transitional programming prior to his release from incarceration.  The First Circuit subsequently reversed the award of damages on the grounds of qualified immunity.  Id. at 19.  The Court further found that the declaration that Ford's DDU sanction was satisfied was not only moot when issued but also unnecessary since "the defendants would . . . be flouting the declaratory judgment, now in effect, were they to return Ford to the DDU without a new hearing on the basis of

4

the 2003 sanction." <u>Id.</u> at 31 (emphasis added).  Finally, the Court ruled that Ford was

the prevailing party as to the injunction related to transitional programming.  <u>Id.</u>

Following the trial, WilmerHale had filed a motion seeking fees in the amount of

$345,542.00 (a significantly reduced amount from the hours actually expended in Ford's

defense) and costs in the amount of $20,456.36.  For the reasons described in a lengthy

and detailed decision, on August 17, 2012, this court ordered that the defendants pay

WilmerHale attorneys' fees in the amount of $258,000.00 and costs in the amount of

$20,456.36.  <u>See</u> <u>Ford V</u>.  In calculating the fee award, this court undertook a lodestar

analysis, further modified by the limitations imposed by the PLRA.  This court reviewed

all of the significant court proceedings, carefully scrutinized all of the time records

submitted, and awarded only those fees which were necessary and appropriate.  As this

court concluded in its decision:

> Finally, the $258,000 in fees is commensurate with the
> amount of work needed to bring this case to resolution.  The fact
> discovery was appropriate in scope and necessary to all the legal
> claims presented.  The core issue throughout the case remained the
> same — whether Ford was appropriately detained in the DDU for
> years without a hearing for a disciplinary infraction.  Although a
> number of legal theories were proffered, they were all premised on a
> common nucleus of facts.  In addition, there were several rounds of
> summary judgment pleadings, a three day trial, and extensive post-
> trial pleadings involving difficult and complex legal issues.  Under
> such circumstances, this court finds the amount of $258,000 to be
> appropriate.

<u>Ford V</u>, 903 F.2d at 104.

The defendants appealed to the First Circuit.  In a decision dated September 24, 2014, the First Circuit reversed in part, vacated in part and, as noted above, remanded the matter for reconsideration of attorneys' fees and costs consistent with its ruling that the defendants were entitled to qualified immunity, that certain equitable relief issued by this court was moot when issued, and that Ford was the prevailing party for "two forms of relief" issued by this court – specifically, the declaratory judgment that the plaintiff's procedural due process rights had been violated in 2008 when he was confined "in the DDU without a new hearing as a convicted felon serving a sentence[,]" and the injunctive relief issued by this court ensuring the plaintiff's access to transitional programming for the remainder of his sentence.  Ford v. Bender, 768 F. 3d at 19-20, 28, 31.  Thus, this court is to assess "the appropriate amount of attorneys' fees and costs for these two forms of relief."  Id. at 31.

On remand, WilmerHale filed the instant motion for attorneys fees and costs.  As the firm recognized, accurately, the First Circuit did not vacate this court's legal or factual  rulings on the merits of Ford's constitutional claims.  (See Docket No. 250 at 1). Moreover, as this court had previously determined (and as quoted above), "whether Ford was appropriately detained in the DDU for years without a hearing" remained the "core" issue throughout the litigation, despite the myriad of legal theories presented, and all the issues presented arose out of "a common nucleus of facts."  (Id. at 2).  WilmerHale further noted that Ford was the "prevailing party" in connection with relief issued as a result of both the summary judgment motions and the trial.  (Id. at 1-2).  Thus, as

6

WilmerHale noted, an argument could be made that Ford "remains entitled to the fees previously awarded." (Id. at 2).

Nevertheless, the plaintiff recognized "that a decrease in fees may be appropriate given that the First Circuit vacated the damages award and held that some of the equitable relief was moot when issued." (Id. at 3). Thus, as WilmerHale explained in support of its modified request:

> Mr. Ford requests an award of fees that is consistent with the important results achieved in this case but also takes into account the diminution of relief following the First Circuit's decision. Strict proportionality of fees awarded to relief obtained is not the law. [*City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S. Ct. 2686, 2694, 91 L. Ed.2d 466 (1986)]. Mr. Ford nevertheless requests only an award that reflects a decrease in the prior award based on the proportion of the relief on which he remains a prevailing party. That is, Mr. Ford remains a prevailing party on two out of the five forms of relief (declaratory judgments, injunctions, and damages) originally granted and thus requests an award of only two-fifths of the original award. Specifically, he requests fees in the amount of $103,200 (2/5 of $258,000) plus the original costs (which were previously undisputed) of $20,456.36. This request is extremely conservative in light of the standard for awarding attorneys' fees in civil rights cases, the public policy interest in awarding attorneys' fees to successful civil rights plaintiffs, and the important results obtained in this litigation.

(Id.).[1]

---

[1]   As this court found previously, "[i]n accordance with the terms of [WilmerHale's] pro bono policy, any legal fees recovered will be applied to unreimbursed costs in this case and other pro bono matters in which the firm is involved. The firm will also donate a portion of its fees to the Prisoners' Legal Services, which assisted in the case. 'WilmerHale will not retain any fees recovered through this petition as part of its general revenues.'" Ford V, 903 F. Supp. 2d at 98 (record citation omitted). WilmerHale confirmed that this remains its policy. (See Docket No. 250 at 2-3).

The defendants strenuously oppose the requested fees in this case.  Despite acknowledging that the First Circuit did not reach the merits of Ford's constitutional claims, they contend that this court "erroneously ruled" that Ford's constitutional rights were violated and "improperly issued" relief.  (Docket No. 251 at 2, 3).  The defendants further object to being "saddled with fees and costs generated by a trial to which they were subjected because of an erroneous ruling."  (Id. at 16).  Notably, however, they have made no effort to analyze WilmerHale's time sheets, and have failed to acknowledge the painstaking analysis previously undertaken by this court.  Rather, in challenging the amount and quality of the work that was performed by Ford's counsel, the defendants merely argue as follows:

> Plaintiff's request for $103,200 in fees, $20,456.36 in costs, plus post-judgment interest, fails to comply in key respects with long-standing judicial pronouncements.  The request neither takes into account his extremely limited success nor excludes time associated with his numerous unrelated claims.  Plaintiff's attorneys overstaffed and over-litigated his case, relentlessly pursuing claims that lacked legal or evidentiary foundation, leading to tremendous waste at every phase of the litigation.  On appeal, the award of damages was reversed and all other relief was vacated.  As a result, viewed under any analytical framework, the requested fees and costs are grossly unreasonable in relation to the critical factor – "the results achieved."  A substantial reduction is in order.

(Docket No. 251 at 1).

The plaintiff filed a Reply memorandum challenging the defendants' interpretation of the First Circuit decision as well as their description of the parties' efforts during the course of the litigation.  (Docket No. 252).  Therein, Ford noted that counsels' hours had

already been scrutinized and reduced by this court in connection with WilmerHale's prior motion on fees. He also emphasized that the amount requested in the present motion was significantly less than the amount this court had previously authorized through summary judgment alone. (See Docket No. 252 at 9-10) (using the lodestar method limited by the PLRA, court had authorized 999 hours at the rate of $169.50 per hour, for a total of $169,297.00 through the court's November 16, 2010 order on summary judgment). For these and other reasons, the plaintiff renewed his request for fees in the amount of $103,200.00 and costs in the amount of $20,456.36, plus post-judgment interest.

Additional facts will be provided below where appropriate.

## III.   ANALYSIS

### A.   General Standard for Awarding Fees

In accordance with the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, a "prevailing party" in a civil rights action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937, 76 L. Ed. 2d 40 (1983) (internal quotation and citation omitted). Reasonable costs also are recoverable under § 1988. Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983). The overriding purpose of the award of fees and costs is as follows:

> Congress's overarching purposes in enacting § 1988, the Supreme Court has held, were "to ensure 'effective access to the judicial process' for persons with civil rights grievances," *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting H.R.Rep. No. 94–1558, at 1 (1976)), and to "encourag[e]

9

the enforcement of federal law through lawsuits filed by private persons," *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 n.6, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (internal quotation marks omitted).  The award of attorney's fees serves this purpose because it corrects a defect Congress identified in the market: "[T]he private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process" because "[t]hese victims ordinarily cannot afford to purchase legal services at the rates set out by the private market" and because the amount of damages in most civil rights suits is ordinarily too low to otherwise cover the cost of a lawyer.  *City of Riverside v. Rivera*, 477 U.S. 561, 576–77, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).

Diffenderfer, 587 F.3d at 455.

To be a prevailing party, the plaintiff must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 199 (1st Cir. 2009) (quoting Hensley, 461 U.S. at 433, 103 S. Ct. at 1939) (additional citation omitted).  Significantly, however, there is no requirement that monetary damages be awarded for a party to qualify as a prevailing party; injunctive or declaratory relief is sufficient.  Lefemine v. Wideman, 133 S. Ct. 9, 11, 184 L. Ed. 2d 313 (2012).  Moreover, as the First Circuit recognized, a plaintiff remains "a 'prevailing party' for the purpose of attorneys' fees and costs under § 1988 if he 'clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal.'"  Ford v. Bender, 768 F. 3d at 30 & n.11 (quoting Diffenderfer, 587 F.3d at 454).  To hold otherwise would be inconsistent with the purposes of § 1988.  Diffenderfer, 587 F.3d at 455 ("To hold that mootness of a

case pending appeal inherently deprives plaintiffs of their status as 'prevailing parties'

would detract from § 1988's purposes").

## **Lodestar Calculation**

As this court detailed in <u>Ford V</u>, the standard to be applied in the instant case is

defined by the "lodestar calculation" normally used to award attorneys' fees, as well as

by the PLRA because Ford was a prisoner.  <u>See</u> 42 U.S.C. § 1997e.  The lodestar

calculation is as follows:

> The lodestar is determined by multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure.  In crafting its lodestar, the trial court may adjust the hours claimed to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case, and subject to principles of inter-connectedness, the trial court may disallow time spent litigating failed claims.  Finally, the trial court has the discretion to adjust the lodestar itself upwards or downwards based on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter.

> In making this adjustment, the trial court should be mindful of the complexities of defining the results obtained.  As we have already noted, in determining the quality of the plaintiff's results, we look to a combination of the plaintiff's claim-by-claim success, the relief achieved, and the societal importance of the rights vindicated.  We have further noted that the computational principles employed to evaluate a skimpy damage award or shortfall in other relief are difficult to quantify, and have described a constellation of potential outcomes, and permissible attorney's fees calculations, under each. In particular, we have emphasized that though a meager damage award may be taken into consideration, the [Supreme] Court has squarely disclaimed the proposition that fee awards under § 1988 should be proportionate to the amount of damages a civil plaintiff actually recovers.

Similarly, while a trial court can and should reduce the lodestar to disallow fees for time inefficiently, unnecessarily, or unreasonably expended, it also must be mindful of the realities of modern litigation.  It is of course true that each fee case generally rests on its own congeries of facts, but nevertheless, we have previously reversed decisions to substantially reduce hours allowed for pre-trial proceedings, where we have found that significant time was expended and the plaintiff was not responsible for the delay....  Thus, although it is possible, and indeed likely, that the district court may discount some of the time plaintiff's counsel spent in pre-trial proceedings, the district court should take care to excise only fat, leaving sinew and bone untouched.  Beyond these general observations, we leave the determination of a reasonable fee to the sound discretion of the trial court.

De Jesus Nazario, 554 F.3d at 207-08 (internal footnotes, citations and quotations omitted).  The burden is on the party claiming fees to prove the reasonableness of the hours claimed.  Burke v. McDonald, 572 F.3d 51, 63 (1st Cir. 2009).

## **PLRA Requirements**

Because Ford was confined to a correctional facility at the time he brought his action, his award of attorneys' fees is governed by the PLRA, 42 U.S.C. § 1997e.  As a general statement, the provisions of the PLRA which complement the lodestar method are as follows:

(d)   Attorney's fees

(1)  In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that –

(A)  the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a

12

> statute pursuant to which a fee may be awarded under section 1988 of this title; and
>
> (B)(i)  the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
> (ii)  the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

42 U.S.C. § 1997e(d) (footnotes omitted).  The PLRA also contains specific limitations on the amount of fees that can be awarded.  For present purposes, the defendants have apparently dropped their arguments (discussed in Ford V) relating to the applicability of these limitations, and have agreed that the appropriate rate is $169.50 per hour.

### B.    Application of the Relevant Principles

The defendants' objections to the requested fee raise basically two claims — that counsel over-litigated the case, and that the litigation accomplished nothing.  This court disagrees with both points.

The defendants' contention that plaintiff's counsel's actions lead "to tremendous waste at every phase of the litigation" is grossly inaccurate.  (See Docket No. 251 at 1). There is no question that this case was hotly contested, and that counsel for both sides represented their clients vigorously.  However, there is also no question that the defendants contributed significantly to the need for extensive judicial intervention.  For example, but without limitation, after extra-judicial requests from counsel that DOC comply with its own regulations proved insufficient, the plaintiffs were forced to file a motion to resolve an issue regarding access to a telephone.  See Ford V, 903 F. Supp. 2d

13

at 103; "Plaintiff Albert Ford's Memorandum in Support of Motion to Compel DOC to Comply with Regulations Governing Telephone Access to Counsel."  (Docket No 65-2). Following this court's summary judgment decision and a direct order by this court, the defendants repeatedly asked for more time to hold a hearing on Ford's placement within the prison allegedly because they could not determine how to proceed.  Not only did the DOC's actions result in the need for a number of motions, but its position also was contradictory to its subsequent argument that the only proper placement for Ford was in the DDU.  See Ford III, 2012 WL 262532 at *4 -5.  In fact, it should be noted that there is evidence in the record that such a hearing may have resulted in a finding that Ford should be housed elsewhere – the 10 year DDU sentence was substantially longer than the sentence Ford received for his criminal conviction on the underlying charges, and he apparently functioned well in general population prior to his release.  See id. at *2, 16. However, that hearing was never held.[2]

Similarly, the defendants' defenses to this case were constantly evolving, and they expanded upon various issues late in the litigation.  For example, despite various opportunities to do so earlier, it was not until trial that the defendants raised an affirma-tive defense in which they argued that Ford was precluded from recovering damages

---

[2] Eventually Ford was charged with committing an infraction (which he denied). Although initially written up as not qualifying for DDU detention, the disciplinary report was rewritten to include DDU-eligible charges. Ford was then given a 10 month DDU sentence which eliminated the defendants' need to hold the hearing ordered by the court.  See Ford III, 2012 WL 262532 at *5.

because he had not suffered any physical injuries.  The issue required a significant

analysis by both counsel and this court, which ultimately found that the defense not only

had been waived but also was not supported by the record.  See Ford III, 2012 WL

262532, at *12-15.  The defendants also filed substantive motions in limine raising other

issues of law for the first time shortly before trial.  (See Docket No. 165).  While there

was nothing precluding the defendants from raising those issues, their decision to do so at

a late date required significant work by plaintiff's counsel and the court in a compressed

period of time.  Similarly, after the trial, after extensive post-trial briefing, and after this

court had issued its extensive decision, the defendants filed a 40-page (plus exhibits)

"Motion to Vacate Judgment for Plaintiff and to Alter or Amend it in Defendants' Favor,"

which sought to, belatedly, expand upon its theories of defense.  (Docket Nos. 216, 217).

See Ford IV.  Again, these constantly shifting theories required a great expenditure of

time and made it difficult to advance the case in an orderly fashion.  Finally, even in

opposing the plaintiff's request for fees, the defendants raised numerous objections

(several of which had been repeatedly rejected by the courts), which required plaintiff's

counsel and the court to devote extensive time and effort.  Ford V, 903 F. Supp. 2d at

100-102.  In short, the defendants contributed substantially to the scope and cost of the

litigation, much of which was not compensable to plaintiff's attorneys.[3]  This court in no

---

[3] For example, counsel expended well over 100 hours in connection with the post-
summary judgment DDU charges, which hours which were not compensable because the work
was not directly related to proving a constitutional violation.  Similarly, the plaintiff could not
recover for the hours spent in connection with the telephone dispute for the same reason.  See

way faults defense counsel for providing a vigorous defense.  Nevertheless, this court

does not accept the defendants' suggestion that plaintiff's counsel, in responding to

defendants' filings and presenting the plaintiff's case, should not be fairly compensated

for the work done as court-appointed counsel in a significant piece of litigation.

Perhaps most inexplicable to this court is the defendants' current argument (in less

polite terms) that the case was over-litigated and over-staffed.  In making this argument,

the defendants fail to even acknowledge this court's earlier fee decision.  In connection

with that decision, this court performed a lengthy, detailed analysis in order to insure that

only fairly compensable time was included in the award.  Strikingly, the defendants have

made no attempt to itemize any particular fees, or identify any issues, which they believe

should be stricken.  Instead, they have left it up to the court to perform the actual

calculation.  This court has already done the defendants' work in connection with the first

fee order, and their present suggestion that there should be a "substantial reduction" in the

fees awarded is remarkably unhelpful.

This court also disagrees with the defendants' basic assessment that the litigation

was a waste of everyone's time.  In ruling that qualified immunity should have been

granted, the First Circuit acknowledged the complex and unsettled issues raised by this

litigation.  For example, the Court held that while "Ford <u>might be right</u> that the timing of

a disciplinary infraction – during the pretrial detention itself as opposed to during a prior

---

<u>Ford V</u>, 903 F. Supp. 2d at 103.

16

period of incarceration – affects the question of whether pretrial disciplinary segregation violates substantive due process[,]" the issue on appeal was "whether any reasonable official in these circumstances would have understood that the continuing disciplinary sanction, imposed when Ford was a pretrial detainee on different charges, for conduct that occurred during a prior period of incarceration, violated Ford's constitutional right to substantive or procedural due process." Ford v. Bender, 768 F. 3d at 25 (emphasis added).  After analyzing all the applicable cases, and finding that none of them definitively answered the question, the First Circuit concluded that the issue remained open and that the defendants were therefore "entitled to qualified immunity with respect to the alleged violation of the plaintiff's right to substantive due process." Id. at 25-27. Similarly, with respect to Ford's claim of a violation of his procedural due process right to a hearing as a pre-trial detainee, the First Circuit found that there was a "dearth of case law" suggesting that a pretrial detainee needed to be afforded a further hearing in the circumstances presented, so the defendant was granted qualified immunity. Id. at 27-28. This decision cannot be read as ruling that Ford's litigation was in any way frivolous. Rather, the First Circuit acknowledged that Ford had raised difficult issues which have not yet been decided.  The First Circuit expressly did not reach the merits of the constitutional claims, leaving for another day the question whether this court erred in finding constitutional violations.

The parties disagree as to the significance of the fact that the First Circuit did not vacate this court's findings of fact and rulings of law.  This court does not need to wade

into this dispute.  It will require subsequent litigation to determine if, in light of this

court's decision, DOC defendants are entitled to qualified immunity if they put a prisoner

in the DDU without a hearing on the basis of a prior disciplinary sanction.  With respect

to the plaintiff in this case, the First Circuit has ruled that "the defendants would . . . be

flouting the declaratory judgment, now in effect, were they to return Ford to the DDU

without a new hearing on the basis of the 2003 sanction." Id. at 31.  Whether this court's

untested, and admittedly non-precedential, ruling is enough to negate a claim of qualified

immunity in connection with other prisoners will need to be decided in the future.

Finally, this court rejects the defendants' attempt to minimize the significance of

the injunction requiring that Ford obtain transitional programming.  There was expert

testimony on this point, and a successful re-entry into the general population in prison,

and then, outside of prison following release, was of critical importance to Ford.  See id.

This court felt that the injunction was required given the history of this litigation and

Ford's relationship with the defendants.  This court has not been persuaded otherwise.

### C.   Assessment of Fees and Costs

The First Circuit has remanded this matter for an assessment of attorneys' fees and

costs for two forms of relief: a declaratory judgment awarded after summary judgment,

and an injunction awarded after trial.  Consistent with the PLRA's requirement that the

award be "proportionately related to the court ordered relief for the violation," 42 U.S.C.

§ 1997e(d)(1)(B)(i), and the First Circuit's remand, which speaks in terms of fees for two

types of relief, Ford has proposed that he recover 2/5 of the fees previously awarded,

18

since he remained the prevailing party on two out of five types of relief awarded.  (See Docket No. 250 at 3; Docket No. 252 at 7-8 & n.3).  As Ford recognizes, however, this is "merely one way to assess the reasonableness of his extremely conservative request." (Docket No. 252 at 7-8).  Exact proportionality is not the law.  Riverside, 477 U.S. at 574, 106 S. Ct. at 2694.

This court finds the requested relief fair under the lodestar method and the PLRA. As detailed above, this court has found that the "fact discovery was appropriate in scope and necessary to all the legal claims presented."  Ford V, 903 F. Supp. 2d at 104.  More-over, "[t]he core issue throughout the case remained the same – whether Ford was appropriately detained in the DDU for years without a hearing for a disciplinary infrac-tion."  Id.  The First Circuit has ruled that Ford is a prevailing party on this core issue, i.e., the declaratory judgment that "Bender had violated Ford's procedural due process rights in 2008 by confining him in the DDU without a new hearing as a convicted felon serving a sentence."  Ford v. Bender, 768 F.3d at 28, 31.  Not only did the defendants elect not to address this issue on appeal, but the merits of this court's ruling are not an issue in this fee petition since events subsequent to this court's ruling have rendered the issue moot.  Id. at 28 n.9, and 30 n.11.  Therefore, this court finds that Ford is entitled to a significant fee award in this case.

Every calculation this court undertakes establishes that the plaintiff's offer is more than reasonable.  For example, this court has already pared down the compensation for work done by the plaintiff's counsel to compensable time applying a lodestar analysis and

the PLRA.  The total amount of time allowed was 1,521.85 hours for 5 years of litigation.

Assuming that the hours were divided evenly between Ford's status as pre-trial detainee

and as a convicted felon, he would be entitled to recover for 760 hours of work.  Wilmer-

Hale is presently seeking compensation for only approximately 608 hours of work, or 2/5

of the number of hours this court has found to have been appropriately awarded on inter-

related issues.  The request for $103,200 in attorneys' fees is reasonable.

Similarly, even if this court were only to calculate fees through summary judg-

ment, the plaintiff would be entitled to a greater amount than the amount that is being

requested.  As described above, this court authorized 999 hours through summary

judgment for an award of $169,297.  An award of approximately 2/3 of that amount is

eminently reasonable given the fact that the legal issues raised were all interrelated.

Moreover, such an award is particularly generous to the defendants.  Under this analysis

no award is given for trial and all the work associated therewith, even though Ford was

found to be the prevailing party as to some relief granted only after trial.[4]

This court further finds the request for limited reimbursement of costs to be more

than reasonable.  The amounts are not challenged, and reflect only a small portion of the

---

[4]  This court recognizes that the trial was limited to damages, and that Ford was deemed
the prevailing party only as to the order of transitional assistance, the remaining relief ordered
being vacated either on the grounds of qualified immunity or mootness.  While this might require
the court to reduce the number of compensable hours expended in connection with the trial, it
would not eliminate them in their entirety.

costs actually associated with this litigation.  Court-appointed counsel should not be asked to forego reimbursement for such necessary and reasonable costs.

Finally, this court repeats what it said in its ruling on the plaintiff's earlier fee petition.

> In so ruling, this court stresses that the quality of the work performed was excellent, and that the attorneys were well-prepared, professional and dedicated to their client and the case.  The reduction in the amount of fees awarded does not reflect a view that the work reported in the time sheets was not done, or that it was not done well.  Rather, ... in this court's view the work on certain issues is not compensable under the PLRA and, at times, the amount of work done on certain issues was excessive, and involved more meetings and re-writes than are appropriately charged to the defendants.  Nevertheless, as Judge Stearns stated in *Hudson v. Dennehy*, in language that is applicable here, "[t]his was an important and complex case that presented an issue of first impression in this Circuit. The action had been pending for [a while] before [Wilmer-Hale] agreed to serve as [Ford's] counsel pro bono.  Prisoner cases are notoriously unpopular among the private bar as pro bono candidates.  [WilmerHale's] agreement to take this case and the commensurate risk of receiving no payment at all is commendable....  Judgment was a solid result for the plaintiff[ ].  Although the case was not brought as a class action, it involved challenges to institutional practices that are likely to impact future cases." *Hudson v. Dennehy*, 568 F.Supp.2d 125, 133–34 (D.Mass.2008).  Counsel certainly earned the fees awarded here.

Ford V, 903 F. Supp. 2d at 94-95.

## ORDER

For all there reasons detailed above, "Plaintiff Albert Ford's Motion for Award of Attorneys' Fees and Costs" (Docket No. 249) is ALLOWED.  WilmerHale is awarded fees in the amount of $103,200 and costs of $20,456.36 plus post-judgment interest.

     / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge